*In re* FEDERICO PIZARRO SANTIAGO.

*Número:* O-84-572      *Resuelto:* 11 de abril de 1986

Roberto Schmidt Monge, *Procurador General,* Eliadís Orsini Zayas, *Procuradora General Auxiliar,* abogados de El Pueblo; *R. Elfrén Bernier,* abogado del querellado; *Federico Pizarro Santiago,* pro se.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

## I

El Procurador General formuló una querella(1) contra el Lic. Federico Pizarro Santiago por violación al Canon 23 de

---

(1)Originalmente la querella consistía de dos cargos, pero el Procurador General desistió del primero.

los de Ética Profesional, donde se le imputaba que "actuó en forma ilegal, inmoral y antiética [con] relación a su cliente la señora Gloria Rivera Vega, cuando la estimuló, consintió e indujo a invertir, en la corporación Eastern Finance, de la cual el abogado querellado era accionista, su asesor legal y consejero financiero, parte de la suma que por concepto de compensación le fuera adjudicada a dicha cliente en el caso que la representaba el mismo abogado, aquí querellado". Pizarro Santiago contestó negándola. Designamos como Comisionado Especial al Exjuez Superior Agustín Mangual Hernández con la encomienda de oír, recibir prueba y formular determinaciones de hecho.

En cumplimiento de ese mandato, el Comisionado nos ha certificado las siguientes determinaciones de hecho:

1. El licenciado Federico Pizarro Santiago fue admitido a ejercer la profesión legal el 5 de marzo de 1963. El 21 de marzo de 1963 fue autorizado a practicar la notaría. Mediante contrato de servicios profesionales jurado ante el Notario Abraham Morales Jiménez el 18 de enero de 1978, la señora Gloria Rivera Vega utilizó los servicios profesionales del licenciado Federico Pizarro Santiago para que, a nombre de ella y de sus hijas menores Brendalis y Mihosotys Parrilla, reclamar[a] por los daños y perjuicios por la muerte de su esposo Edwin Parrilla Rivera en un accidente de aviación ocurrido el 19 de diciembre de 1977. (Exhibit IX de ambas partes).

2. De conformidad con dicho contrato, el licenciado Pizarro Santiago radicó una demanda en el Tribunal Superior, Sala de San Juan, que lleva el número 78-1467 (804). Luego de varios trámites en el caso, la señora Gloria Rivera Vega radicó una solicitud de Autorización Judicial. El Tribunal, luego de celebrar una vista, aprobó la transacción de la reclamación de las menores Brendalis y Mihosotys Parrilla. A dichas menores le[s] correspondió la suma de $12,000.00 a cada una. (Exhibit II de ambas partes).

3. A la señora Gloria Rivera Vega le correspondió la suma de $50,000.00. De conformidad con el contrato de servicios profesionales, el licenciado Pizarro Santiago cobró la suma de

$15,834.00 y a la señora Rivera Vega le correspondió la suma de $31,666.00. Se le entregaron $32,000.00. La señora Vega depositó una cantidad en una cuenta de ahorros en el Banco de Ponce, Sucursal de Carolina.

4. Del dinero que le correspondía a la señora Gloria Rivera Vega, *en circunstancias que no fueron explicadas, $25,000.00 fueron invertidos en la financiera conocida como Eastern Finance Corporation, con oficinas en Río Grande.* A la señora Rivera Vega se le entregó un documento de esta corporación conocido como "Junior Subordinated Note" que lleva fecha 24 de noviembre de 1978 donde consta que se le pagaban intereses a razón del once por ciento (11%) anual. *No tiene fecha de vencimiento.* (Exhibit XII de ambas partes).

5. *Durante la fecha de esta transacción el licenciado Federico Pizarro Santiago era asesor legal e inversionista minoritario en la mencionada corporación financiera.*

6. En una fecha posterior a dicha inversión, la señora Rivera Vega tomó un préstamo a la mencionada corporación financiera. De los intereses que le correspondían, se le descontaba la cantidad que mensualmente debía pagar del préstamo que adeudaba. Para aquella época, la señora Rivera Vega era amiga de la Sra. América Ventura, quien era funcionaria y tenía intereses también en la mencionada corporación financiera.

7. Durante la vista de este caso, la señora Gloria Rivera Vega extrajo de su cartera varios talonarios acreditativos de los cheques de intereses que le pagó la Eastern Finance Corporation de la inversión de $25,000.00 ya mencionada. Admitió que en el año 1984 le envió una carta a la licenciada Orsini donde le informaba que los talonarios y recibos los había perdido en unas inundaciones que ocurrieron donde ella reside. (Exhibit XVII y XVIII de ambas partes).

8. La señora Rivera Vega admitió que le dio instrucciones a la señora Ventura para que descontara de los intereses el pago de un préstamo que su hermana tomó a dicha financiera.

9. El Comisionado Especial quiere hacer constar que pudo observar que durante el interrogatorio de la señora Rivera

Vega, ésta incurrió en contradicciones por lo que su credibilidad quedó en entredicho.

10. De la prueba documental ofrecida por las partes surge que en los años 1979 y 1980 la señora Rivera Vega estuvo recibiendo los intereses que le enviaba Eastern Finance Corp. y en momento alguno se quejó de que hubiera invertido dinero en dicha financiera o de que el licenciado Pizarro Santiago la hubiera inducido a hacer dicha inversión. La dificultad surgió cuando la corporación, víctima del aumento de los intereses en el mercado monetario, no pudo continuar pagando los intereses.

11. De la prueba documental también surge que el señor Eduardo Ventura, quien era uno de los oficiales de dicha financiera, tenía amistad con la señora querellante y hac[í]an arreglos para, en algunas ocasiones, no descontarle el pago de los préstamos y reembolsarle los intereses íntegros que devengaba dicha inversión. (Exhibit XVIII).

12. Según la prueba documental ofrecida por las partes, la señora Gloria Rivera recibió un total de $22,052.21 pagados por la Eastern Finance Corporation por concepto de intereses, retiros del principal y pagos de préstamos de ella y su hermana.

13. Luego de que dicha financiera no le continuó pagando intereses y tampoco le devolvió el remanente del principal invertido, fue que la señora Rivera Vega se querelló a la Oficina del Procurador General.

14. Durante la vista manifestó que [en] . . . lo que tenía[n] interés era que le devolvieran el dinero invertido.

15. *A pesar de que la señora Rivera Vega alega que el licenciado Pizarro Santiago fue quien la indujo a hacer la inversión en la financiera, no hay duda de que ella tenía amistad con Eduardo y América Ventura, quienes eran los inversionistas mayoritarios y oficiales de dicha corporación.* (Énfasis suplido.)

## II

En su comparecencia, el Procurador General —aun cuando coincide con el Comisionado Especial en que la promovente Rivera Vega incurrió en numerosas contradicciones— estima

que las mismas no deben afectar su credibilidad, pues fueron producto natural de su poca instrucción escolar y sus escasos conocimientos. Según su criterio, la prueba reveló que ella quiso depositar totalmente su dinero en un banco, pero que lo invirtió en la Compañía inducida por el abogado Pizarro Santiago. Por su parte, éste argumenta que la inversión fue convenida y realizada con otros funcionarios de la financiera y que la querella responde a un intento de recobrar lo invertido.

El examen de la transcripción de evidencia y la prueba documental tiende a sugerir que la inversión que hizo la señora Rivera Vega fue inicialmente lucrativa. La misma generaba más intereses que los que satisfacían los bancos comerciales. Cuando éstos cesaron dos años después por causa de dificultades de la financiera, inició gestiones tendentes a señalar al licenciado Pizarro Santiago como responsable de las consecuencias negativas de su inversión.

Ante esa realidad, no podemos coincidir totalmente con el Procurador General. Las circunstancias de esa inversión no fueron debidamente explicadas por la prueba. El Comisionado Especial la aquilató y dirimió. No creemos justificado intervenir con su apreciación. Solamente habremos de ampliar sus determinaciones de hecho en aquellos aspectos relevantes. Sobre este extremo, sólo revela que la secretaria del licenciado Pizarro Santiago recibió el cheque original de $50,000 el 1ro de noviembre de 1978 y que fue cambiado en efectivo el 27 de ese mes. Existe, pues, una insalvable laguna evidenciaria en cuanto a la intervención directa y grado de asesoramiento *previo*, si alguno, por parte del abogado Pizarro Santiago. Todo tiende a indicar que la relación directa y decisión de la señora Rivera Vega fue a través y por consejo de la Sra. América Ventura, funcionaria de la corporación. El cargo, tal y como fuera imputado al querellado Pizarro Santiago, no fue debidamente probado.

Ahora bien, es incuestionable que el licenciado Pizarro Santiago advino en conocimiento de la inversión inmediata-

mente *después* de ser realizada. (T.E., pág. 112.) Hasta ese momento la señora Rivera Vega era su cliente. Una de las oficinas de la financiera Eastern Finance estaba ubicada en la misma segunda planta en que estaba su oficina. (T.E., pág. 102.)

La prueba refleja que el *Junior Subordinated Note* se expidió el 24 de noviembre, tres días antes de que se cambiara el cheque. (T.E., págs. 114–115.) También, que *por error*, no tenía fecha de vencimiento. (T.E., pág. 129.) Ello significa que legalmente la señora Rivera Vega podía exigir la devolución de toda su inversión a la financiera en cualquier momento. Desconocemos si el licenciado Pizarro Santiago era consciente o no de esta realidad. No hay prueba de que tuviera conocimiento específico de que la nota careciera de fecha de vencimiento. Aparentemente descansó en que el documento era completo y regular. Por tal razón supuso erróneamente que esa devolución y solicitud de la señora Rivera Vega no procedía. Según él, "ella, posteriormente *y con frecuencia llamaba* diciendo que *necesitaba retirar ese dinero* . . . [lo cual] *iba en violación del acuerdo* que ella había hecho con la compañía . . . ella llamaba a cada rato, *los otros socios míos estaban en contra de esa práctica* porque la razón por la cual nosotros pagábamos esos intereses se debía única y exclusivamente de que ese dinero estaba por cierto tiempo". (T.E., pág. 106.) (Énfasis suplido.)

Ante esta realidad, cobra vigencia el Canon 21 que versa sobre intereses encontrados y prohíbe el conflicto dimanante de representar intereses encontrados o incompatibles. *In re Carreras Rovira y Suárez Zayas*, 115 D.P.R. 778 (1984). Nos explicamos. En el caso de autos, aun cuando la compañía financiera Eastern Finance era una entidad corporativa con personalidad propia distinta, no podemos pasar por alto que el licenciado Pizarro Santiago era también su

asesor legal y uno de los tres accionistas principales. Su conducta posterior, aunque pasiva, de equivocadamente sostener la posición de la Corporación contra los legítimos reclamos de la señora Rivera Vega, resultó conflictiva con el espíritu deontológico que inspira el Canon 21. Como sostuvimos en *In re Cancio Sifre*, 106 D.P.R. 386, 398 (1977), la "ética es una en su integridad, indemne al fraccionamiento que en la ley separ[a] la corporación de su accionista". La situación pudo muy bien evitarla. Siendo uno de los accionistas de dicha compañía, su asesor legal, financiero y miembro de la Junta de Directores, *sua sponte* debió prudencialmente informar y advertir a la señora Rivera Vega, con constancia de ello, de que su inversión era por su cuenta y riesgo y que él se abstendría de intervenir y asumir posición en el asunto. De este modo hubiese superado cualquier conflicto.

■ En las circunstancias de autos, no habiéndose probado el cargo sobre intervención directa y asesoramiento previo, y considerando que la posición asumida por el querellado Pizarro Santiago fue producto de un error de juicio en cuanto a la regularidad del *Junior Subordinated Note* y no al resultado de la mala fe, limitaremos nuestro decreto a una amonestación, apercibiéndole de la obligación que continuamente acompaña a todo abogado de evitar, tanto en la realidad como en la apariencia, la impresión de conducta conflictiva. *In re Félix*, 111 D.P.R. 671, 674 (1981); *In re Maldonado Soto*, 110 D.P.R. 748, 753 (1981).

*Se dictará la correspondiente sentencia.*

El Juez Presidente Señor Pons Núñez y el Juez Asociado Señor Rebollo López no intervinieron.