*In re* FERNANDO CAMPOAMOR REDÍN, querellado.

*Número:* CP-92-674 *Resuelto:* 19 de enero de 1996

910

*Anabelle Rodríguez, Procuradora General, Reina Colón de Rodríguez, Subprocuradora General,* y *Miguel A. Santana Bagur, Procurador General Auxiliar,* querellantes; *Fernando Olivero Barreto,* abogado de la parte querellada.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Contra el Juez Fernando Campoamor Redín se presentó una querella en la que se le imputan violaciones a los Cánones de Ética Judicial, 4 L.P.R.A. Ap. IV-A, por alegadamente haber alterado la minuta de una vista judicial en la cual se dilucidaba una acción civil en que el propio querellado era parte.

Debemos determinar si ciertos incidentes acontecidos en *Sucn. de Ramón Ortiz Ortiz v. Fernando Campoamor Redín y otros,* Caso Civil Núm. CS-89-2509, en los cuales estuvo involucrado el Juez Campoamor Redín, deben dar paso a la imposición de sanciones disciplinarias por parte de este Tribunal.

I

El Lcdo. Fernando Campoamor Redín, abogado desde 1970, fue nombrado Juez de Distrito en 1977, cargo que desempeñó hasta 1981, cuando fue ascendido a Juez Superior. Hasta 1983 estuvo asignado a la Sala de Guayama, año cuando fue reasignado a la Sala de Aibonito. En enero de 1993 fue reasignado de nuevo a la Sala de Guayama, donde permaneció hasta el 30 de junio de 1994, fecha cuando venció su nombramiento de Juez Superior. Campoamor Redín no fue renominado.

El 9 de noviembre de 1989, la sucesión de Ramón Ortiz Ortiz y de Mercedes Rivera Torres presentó una acción ci-

vil contra Fernando Campoamor Redín y su esposa Adalís Marie Torres Negrón. La disputa entre las partes giraba en torno a unas alegadas alteraciones de colindancias y la construcción de trincheras en terrenos de los demandantes por parte de los demandados, entre otros asuntos. Aun cuando de acuerdo con los criterios de competencia, Regla 3.2 de Procedimiento Civil, 32 L.P.R.A. Ap.III, el caso debía ventilarse en la Sala de Aibonito, los demandantes lo presentaron en la Sala de Ponce. La solicitud se fundamentó en el argumento de que el demandado Campoamor Redín se desempeñaba en ese momento como Juez Superior y estaba asignado precisamente a la Sala de Aibonito. El tribunal de instancia no accedió a la petición, por lo que los demandantes acudieron en *certiorari* ante nos.

En *Sucn. Ortiz Ortiz v. Campoamor Redín*, 125 D.P.R. 106 (1990), resolvimos que, dada la naturaleza de las circunstancias, procedía que la acción civil instada por los demandantes se dilucidara en el entonces Tribunal Superior, Sala de Ponce. A tales efectos, expresamos lo siguiente:

> ... Existe una realidad que no podemos ignorar. El codemandado, Hon. Fernando Campoamor Redín, es un Juez Superior asignado, de manera regular, a la Sala de Aibonito del Tribunal Superior. Dilucidar el caso en la referida Sala implica que un compañero juez de éste, el cual comparte día a día y hombro con hombro en la Sala de Aibonito la gran responsabilidad de impartir justicia, tendrá la difícil encomienda de pasar juicio sobre la credibilidad de un compañero de labores. Ello, en adición a situar en una angustiosa situación a dos compañeros jueces, *puede poner en entredicho y causar un gran daño a la imagen de la justicia en nuestra jurisdicción.* (Énfasis suplido.) *Sucn. Ortiz Ortiz v. Campoamor Redín*, supra, pág. 108.

A tono con nuestra decisión, el caso siguió ventilándose en Ponce. Posteriormente y como parte del desarrollo del pleito, se hizo necesario celebrar una inspección ocular en Aibonito, para lo cual se pautó una vista el 24 de septiembre de 1990 en el Centro Judicial de dicho municipio. Aun-

que la vista la presidió el mismo juez a quien el caso estaba asignado, Hon. Gustavo Rodríguez, el personal de sala utilizado fue provisto por el Centro Judicial de Aibonito.

Una vez finalizada la vista, la secretaria de sala que prestó funciones ese día preparó un proyecto de minuta el cual es objeto de controversia en este proceso disciplinario. Se alega que Campoamor Redín tuvo acceso al borrador de la minuta y lo alteró mediante tachaduras y correcciones. Una cadena de eventos suscitó que varios empleados administrativos del Centro Judicial de Aibonito, la parte demandante en el pleito y los miembros de la prensa supieran sobre la intervención del Juez Campoamor Redín con la minuta.

Mediante una Comunicación de 21 de noviembre de 1990, el entonces Juez Administrador del Centro Judicial de Aibonito, Hon. Luis A. Juan Álvarez, solicitó al Director Administrativo de los Tribunales una investigación en torno a los sucesos antes descritos.[1] La investigación fue realizada y un informe fue rendido por la Oficina de Asuntos Legales de la Oficina de la Administración de los Tribunales el 25 de junio de 1992. Tras examinar dicho informe, en unión a una queja presentada por la Sra. Lydia M. Ortiz Rivera, mediante la Resolución de 15 de septiembre de 1992 el Juez Presidente Señor José A. Andréu García halló causa probable contra el Juez Campoamor Redín por conducta profesional impropia y se inhibió en todo trámite posterior.

El 18 de septiembre ordenamos a la Procuradora General que formulara una querella disciplinaria contra el Juez Campoamor Redín.[2] En cumplimiento de dicho mandato,

---

[1] Era motivo de especial preocupación para el Juez Administrador que personal del tribunal, con acceso a proyectos de minutas y proyectos de sentencias, estuviera mostrándolos a particulares.

[2] El procedimiento disciplinario se llevó a cabo al amparo de la Sec. 24 de la Ley Núm. 11 de 24 de julio de 1952, según enmendada, 4 L.P.R.A. sec. 232, y la Regla 13 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. I-A. No aplica el nuevo

el 20 de noviembre de 1992 la Procuradora General formuló dos (2) cargos en su contra.

En el primer cargo se le imputó al querellado conducta impropia por intervenir de forma directa e indebida en la preparación de la minuta correspondiente a una vista celebrada en el transcurso de *Sucn. de Ramón Ortiz Ortiz v. Fernando Campoamor Redín y otros*, Caso Civil Núm. CS-89-2509, en que el querellado era parte. Alegadamente su intervención colocó en entredicho la integridad del proceso judicial al desempeñarse Campoamor Redín como juez en el mismo Centro Judicial donde se celebró la susodicha vista. Esto es en menoscabo de la confianza pública y la seriedad que acompañan los procesos judiciales, pudiendo crear la impresión de que por ser juez estaba en mejor situación en el litigio de causas personales. Se le imputa haber violado lo dispuesto en los Cánones I, XII(b) y (g), XXIII y XXVI de Ética Judicial, 4 L.P.R.A. Ap. IV-A.

En el segundo cargo se le imputó a Campoamor Redín una conducta altamente impropia y lesiva al quehacer judicial cuando cometió los mismos hechos alegados en el primer cargo, en abierto menosprecio a la letra y al espíritu de nuestro dictamen en el caso *Sucn. Ortiz Ortiz v. Campoamor Redín*, supra, en el cual dispusimos el traslado de la acción civil al Tribunal de Primera Instancia, Sala Superior de Ponce. Se sostiene que dicho comportamiento fue en detrimento de la imagen de la justicia, situación que este Tribunal precisamente quiso evitar en el mencionado dictamen. Esta conducta, alega el Procurador General, infringió lo dispuesto en los Cánones I y XII de Ética Judicial, *supra*.

procedimiento adoptado mediante enmienda a la Ley Núm. 64 de 6 de septiembre de 1992 (4 L.P.R.A. sec. 232) ni las Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones. *R. Proc. por Salud Jueces T.P.I. y T.A.*, 131 D.P.R. 630 (1992). Ambos comenzaron a regir el 24 de noviembre de 1992. Véanse: Art. 2 de la Ley Núm. 64, *supra*, 4 L.P.R.A. sec. 232 n., y las Reglas 40 y 41, *R. Proc. por Salud Jueces T.P.I. y T.A.*, supra, pág. 672.

Oportunamente, el querellado contestó los dos (2) cargos formulados. Negó ambos y alegó que sus actuaciones fueron realizadas de la mejor buena fe, sin beneficio para su persona ni perjuicio a las partes contrarias. Señaló, además, que no actuó como juez en un proceso en que la ley le prohíba actuar ni ejerció influencia indebida en el ánimo de otro juez, tal como prohíbe el Canon XXIII de Ética Judicial, *supra*.

El 25 de enero de 1993 designamos al ex Juez Superior y ahora Juez del Tribunal del Circuito de Apelaciones, Lcdo. José Aponte Jiménez, para que, en presencia de las partes y en calidad de Comisionado Especial, escuchara y recibiera la prueba que éstas pudiesen presentarle. Celebrada la vista del caso, el Comisionado Especial presentó un primer informe el 16 de diciembre de 1994, el cual fue enmendado a solicitud del querellado. Un segundo informe enmendado, esta vez final, fue presentado en enero de 1995. Prontamente el Procurador General compareció el 19 de enero de 1995 y expuso sus discrepancias con algunas de las determinaciones de hecho del señor Comisionado Especial. Después de unos incidentes procesales adicionales, el caso quedó sometido para decisión en sus méritos.

## II

La vista del proceso disciplinario se celebró durante los meses de septiembre y octubre de 1994. Sirvieron como testigos del Procurador General: Evaristo Álvarez Ghigliotti, perito examinador de documentos, Migdalia Ortiz Meléndez, Irma Rosa Díaz Santiago, Ligia Margarita Ortiz Rivera, Lucía Santiago Rivera, Olga Colón Mejías y Betty Ann Soto Concepción. Por el querellado atestiguó el propio Campoamor Redín, además de varios jueces y abogados, todos como exponentes de su buena reputación. Las secretarias Eva Lydia Rolón Díaz, Esperanza Colón Santos y el

ex Juez Administrador del Centro Judicial de Aibonito, el Lcdo. Luis A. Juan, declararon a requerimiento del Comisionado Especial.

En su informe, el Comisionado Especial procura exponer las versiones conflictivas sobre lo acontecido para así, a través del recuento, ir adjudicando cuál testimonio le fue más creíble o razonable adoptar. Veamos cómo dirimió la prueba.

Con anterioridad a la vista de 24 de septiembre de 1990, la supervisora de servicios de sala, Migdalia Ortiz Meléndez, designó a la secretaria Olga Colón Mejías para que actuara como secretaria de sala durante la vista. Aunque a Campoamor Redín no se le consultó dicha designación, cabe mencionar que Colón Mejías asistía regularmente a la sala del querellado en Aibonito como secretaria de sala.

Al concluir la vista, Colón Mejías redactó un proyecto de minuta a base de la grabación de los procedimientos. Lo que ocurrió luego es objeto de disputa por las partes. Se le imputa a Campoamor Redín que, con posterioridad a la vista y en el proceso de preparación de la minuta correspondiente a los procedimientos de ese día, tuvo acceso directo al borrador de la minuta y lo alteró. El querellado alega que corrigió algunas partes de la minuta a instancia de la oficial jurídica del Centro Judicial de Aibonito, a quien la secretaria de sala había solicitado, en primer lugar, el cotejo del borrador.

El Procurador General sostiene a base de lo declarado por Ortiz Meléndez, supervisora de servicios de sala en el Centro Judicial de Aibonito, que la secretaria Colón Mejías entregó el proyecto de minuta a Campoamor Redín a solicitud de éste y que, tras el querellado hacerle unos cambios, Colón Mejías visitó a su supervisora Ortiz Meléndez. Según Ortiz Meléndez, Colón Mejías lucía muy nerviosa y temerosa ante la difícil situación en que la habían colocado los cambios realizados por Campoamor Redín. Colón Me-

jías declaró, por su parte, que al terminar de preparar la minuta la encontró "muy larga" y decidió abreviarla. A tales efectos, entregó el proyecto de minuta a la oficial jurídica del Centro Judicial de Aibonito, Betty Ann Soto Concepción —quien no estuvo presente en la vista— con el propósito de que ésta le ayudara a corregir la minuta. El Comisionado Especial brindó mayor credibilidad al testimonio de la secretaria Colón Mejías.

> ... [N]o puedo coincidir con la inferencia de la testigo del Procurador General, Migdalia Ortiz Meléndez, al ésta deducir que fue al querellado a quien la secretaria Colón Mejías le entregó el proyecto de minuta y que entonces éste lo lleva a la oficial jurídico, Betty Ann Soto Concepción, por ser todo ello simples conjeturas. La versión que sobre ese particular adopto y brindó [sic] crédito es que la secretaria Olga Colón Mejías llevó y entregó a la oficial jurídico Betty Ann Soto Concepción el proyecto de minuta que redactó con el propósito de que la abreviara por encontrarla demasiado larga y para que la revisara. Informe enmendado, pág. 9.

El incidente en particular, que da pie a la querella contra Campoamor Redín, es descrito del siguiente modo por el Comisionado Especial:

> Estando la oficial jurídico Betty Ann Soto Concepción en el proceso de abreviar y revisar la minuta que le llevó la secretaria Olga Colón Mejías, el querellado acude a la oficina de aquélla en gestiones ajenas a la corrección del proyecto de minuta. Es consultado por Soto Concepción sobre lo resuelto durante la vista del caso celebrada en Aibonito. A esos fines, ésta le mostró el proyecto de minuta que le entregó la secretaria Colón Mejías al que ya le ha "tachado" varios de los párrafos que contiene, tal y como lo demuestra el exhibit I del Procurador General. El querellado se percata de ello al revisar el proyecto. También se percata de que el proyecto de minuta tiene ciertos errores. Corrige personalmente los siguientes: En el encabezamiento sustituye "Ponce en Aibonito" por "Ponce"; En la página "3" escribe en el cuarto párrafo, al comienzo, la frase "Luego de darse por sometido el caso por los demandantes", En ese mismo párrafo tacha la frase "esta causa de acción" y la sustituye escribiendo encima "la solicitud de injunction preliminar". Escribe la pala-

bra "el" en la página "4" párrafo sexto. ... Para realizar las mencionadas enmiendas utilizó un bolígrafo con tinta negra que le suministró la oficial jurídico, Betty Ann Soto Concepción en ese instante. Informe enmendado, pág. 10.

*El informe es concluyente, pues, en determinar que Campoamor Redín participó en la corrección de la minuta.*

El Comisionado Especial también adjudicó lo concerniente al grado de intervención del querellado con el borrador de minuta. El Procurador General intentó proyectar la idea de que la intervención de Campoamor Redín en la minuta había sido amplia y no se limitaba a unas simples correcciones realizadas a solicitud de la oficial jurídica. Para esto utilizó el testimonio pericial de Evaristo Álvarez Ghigliotti. El periódico *El Vocero de Puerto Rico* había contratado los servicios de éste para examinar la intervención de Campoamor Redín con el borrador de minuta. El rotativo utilizó los servicios del perito examinador forense de documentos para determinar científicamente quién había realizado las correcciones manuscritas.

El Comisionado Especial dio más peso a la versión que caracterizaba la actuación del querellado como limitada. Si bien Álvarez Ghigliotti determinó que las anotaciones las había hecho el querellado, cabe aclarar que el perito distinguió entre las "correcciones" (las anotaciones) que Campoamor Redín admite haber realizado y las "tachaduras", las cuales el querellado atribuye a la oficial jurídica Soto Concepción. En cuanto a las tachaduras, aunque sí pudo afirmar que fueron realizadas con un instrumento similar al que usó el querellado en las muestras utilizadas para comparar su escritura, no se pudo demostrar que fueron realizadas por Campoamor Redín.

Respecto a las correcciones realizadas por el querellado, el Comisionado Especial concluyó lo siguiente:

Por último, una lectura de la transcripción de evidencia de la vista celebrada en Aibonito el 24 de septiembre de 1990 refleja

que todo lo que se incluyó en el proyecto de minuta redactado originalmente por la secretaria, Olga Colón Mejías, ocurrió en la forma que ella lo describe. Lo omitido por las "tachaduras", sin embargo, no constituyen, a mi juicio, hechos relevantes que afecten la sustancia de lo ocurrido y resuelto durante la vista. Lo mismo opino en cuanto a todas las enmiendas y "correcciones" realizadas por el querellado. Coincido específicamente con el criterio de que la "corrección" que hizo el querellado en el proyecto de minuta en lo atinente a que el magistrado durante la vista celebrada el 24 de septiembre de 1990 desestimó "la solicitud de injunction preliminar" en lugar de "esta causa de acción", como lo hizo constar originalmente la secretaria Colón Mejías en el proyecto de minuta, refleja correctamente la resolución dictada por el juez en la vista celebrada.(3)

Con el beneficio de las determinaciones de hechos recogidas en el informe y tras un examen del expediente que lo acompaña, estamos en posición de exponer la doctrina ética aplicable.

## III

Nuestro compromiso con todas las personas que depositan su confianza en los tribunales del país queda plasmado en el Canon I de Ética Judicial, *supra*. Éste dispone que "[l]a fe de un pueblo en la justicia, como valor esencial de la democracia, debe ser mantenida por los tribunales a los más altos niveles de la responsabilidad pública". Al momento de resolver las controversias es nuestro deber adjudicarlas de una forma justa e imparcial. Sólo

---

(3) Es importante señalar que la minuta "corregida" fue finalmente retirada del expediente del caso. Mediante una moción presentada el 16 de noviembre de 1990, la parte demandante solicitó su sustitución por no reflejar lo acontecido en la vista. Posteriormente, el 7 de diciembre se celebró una vista para discutir lo relativo a la moción de sustitución. Ante la determinación del tribunal de instancia de unir al expediente el original de la minuta preparado por Colón Mejías, la parte demandante retiró su moción de sustitución.

El caso fue resuelto finalmente mediante una sentencia dictada el 11 de marzo de 1993 por el ahora Tribunal de Primera Instancia, Sala Superior de Ponce. El dictamen, el cual advino final y firme, resultó en general favorable a la parte demandante, la Sucesión Ortiz Ortiz y otros.

así estimularemos el respeto y la confianza pública que debe existir hacia los tribunales. *In re Marrero Torres*, 113 D.P.R. 113, 115 (1982). Ello supone, de parte de los miembros de la Judicatura, un comportamiento que manifieste entereza, convicción e imparcialidad. Dichas exigencias quedan plasmadas en un Código de Ética Judicial, cuerpo que delínea la normas éticas de conducta que deben guiar el desempeño del cargo judicial. Véase el Canon XXVI de Ética Judicial, *supra*. La querella presentada contra el licenciado Campoamor Redín le imputa haber transgredido los referidos cánones mientras se desempeñaba como Juez Superior.

Es menester comenzar señalando que en nuestro dictamen en *Sucn. Ortiz Ortiz v. Campoamor Redín*, supra, precisamente quisimos evitar el tipo de situación que hoy motiva esta querella. Aunque la celebración de la vista en Aibonito no fue promovida por el propio Campoamor Redín y se trató, en cambio, de una incidencia procesal necesaria dentro del pleito, *a la cual accedieron ambas partes*, lo cierto es que las circunstancias propiciaron que eventualmente el juez querellado tuviera un contacto indebido con el caso. Éste fue el tipo de contacto que siempre quiso evitarse.

 El deber de desempeñar la función judicial mediante una conducta imparcial es inherente a la misión de dispensar justicia. Esta máxima se pone a prueba ante la grave situación de que un juez sea parte, en su carácter personal, de un pleito. En vista de la posición conflictiva en que esto puede situar al juez, este Tribunal adoptó el Canon XII de Ética Judicial, *supra*, el cual dispone, en sus incisos (b) y (g), lo siguiente:

> El Juez no debe entender en procedimiento judicial alguno en que la ley le prohíba actuar, incluyendo, pero sin limitarse a cualesquiera de los casos siguientes:
>
> . . . . . . . .

(b) Por estar directa o indirectamente interesado en el resultado del caso.

. . . . . . . .

(g) Por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia.

█ El Canon XXIII de Ética Judicial, *supra*, dispone, por su parte, que:

> El Juez debe evitar toda conducta o actuación que pueda dar base a la creencia de que ejerce o pretende ejercer influencia indebida en el ánimo de otro Juez en la consideración de un caso pendiente o futuro. El Juez no debe influir ni directa ni indirectamente, para conseguir colocarse en mejor situación que cualquier otro ciudadano en el litigio de sus causas personales.
> El Juez no debe dar la impresión ni permitir que otros den la impresión al efecto de que éstos pueden tener alguna influencia sobre aquél.
> El Juez no debe prestar testimonio por iniciativa propia como testigo de reputación.

De manera diáfana, las disposiciones anteriores reflejan un interés legítimo en salvaguardar la imagen de la Judicatura. En ese sentido, ya antes hemos llamado a la cautela cuando los jueces nos vemos obligados a participar como parte en un procedimiento judicial. Sería ingenuo obviar la posibilidad de que la otra parte interprete su posición dentro del litigio como desventajosa. La posición que ostentamos y la más sana administración de la justicia nos exigen evitar esa apariencia. *Bonilla v. Citibank*, 116 D.P.R. 705, 709 esc. 3 (1985); *In re Hernández Enríquez*, 115 D.P.R. 472 (1984). En este proceso disciplinario se atribuye a Campoamor Redín un comportamiento contrario a los preceptos de orden ético descritos.

En cuanto a los hechos, tal como fueron adjudicados por el Comisionado Especial, no nos convencen los cuestionamientos que hace el Procurador General al oponerse a varias de las conclusiones a las que el primero llega en su

informe. Sus objeciones giran realmente en torno a la apreciación de la prueba. Tras examinar la transcripción de la evidencia y la prueba documental que tuvo ante sí el Comisionado Especial, concluimos que no existe razón para sustituir sus determinaciones de hecho, pues hallan sustento en la prueba desfilada. *In re Calzada Llanos*, 124 D.P.R. 411, 424 (1989).

No obstante, no albergamos la menor duda de que tanto los Cánones de Ética Judicial, así como un buen juicio sobre la función e imagen judicial, apuntaban hacia la abstención de Campoamor Redín de intervenir en el proceso de corrección de la minuta. En la Contestación a querella, págs. 2 y 6, el querellado adopta como suya la siguiente versión de los hechos:

"La Sra. Betty Soto tomó el documento y se lo llevó a su oficina colocándolo sobre su escritorio. Dos días después, mientras trabajaba con un expediente, entró a su oficina el juez Campoamor Redín y aprovechó la ocasión para consultarle si una indicación contenida en el borrador relativa a la desestimación de la acción se refería a la totalidad del pleito o al interdicto preliminar solicitado, teniendo en cuenta que el Juez había estado presente en la referida vista al momento de emitirse este dictamen. El juez Campoamor Redín al examinar el documento le indicó que lo que se había desestimado era la solicitud de interdicto preliminar y no el pleito en su totalidad. *Acto seguido, procedió a corregir en dicho borrador, en su puño y letra con un bolígrafo que le facilitó la Oficial Jurídico, donde se le señaló que había el error. También realizó otras correcciones que entendió necesarias para mayor claridad de la Minuta.*" (Énfasis suplido.) Contestación a querella, pág. 6.

Como vemos, la intervención del querellado en la preparación de la minuta es un hecho incuestionado *y admitido por el mismo Campoamor Redín.*

El querellado pretende presentar su intervención como un incidente casual, en el cual siempre medió la mejor buena fe. Ya en *In re Pizarro Santiago*, 117 D.P.R. 197, 203 (1986), en el contexto de la responsabilidad profesional

de los abogados, expresamos nuestra renuencia a distinguir entre el perjuicio que puede causar una impresión de conducta conflictiva, *real* o *aparente*. La imprudencia del querellado no puede hallar resguardo en una inocente y bien intencionada petición de una oficial jurídica. Las normas más elementales de ética exigían que se evitara cualquier tipo de contacto del querellado con la minuta. Aseverar que su participación en la corrección de la minuta no constituyó una intervención en un proceso judicial es una interpretación inadmisible. Los procedimientos judiciales consisten de un sinnúmero de etapas y gestiones simultáneas que en muchas ocasiones no están bajo la supervisión inmediata de un juez y se dan fuera de sala. La intervención en la preparación de una minuta o en la fijación del calendario de casos pendientes ante una sala, por dar sólo un ejemplo, son trámites susceptibles de ser aprovechados para propósitos de índole personal.

Campoamor Redín también aduce en su defensa que realizó correcciones *a un borrador* y no *a la minuta*, como documento oficial. La distinción es insostenible, máxime en el contexto de la normativa ética. Sería un ejercicio fútil tener que decidir hoy qué resulta más grave, si intervenir en la preparación de un documento con la posible intención de que el resultado final se ajuste a unos intereses personales o, por otro lado, la alteración de un documento público del tribunal. Lo cierto es que la participación de Campoamor Redín en la preparación de la minuta fue indebida. Al respecto, salvo para servir como atenuante la sanción, poco importa que las correcciones realizadas al documento fueran al fin y al cabo certeras.

IV

Como señaláramos antes, a este momento el querellado no ocupa ya posición alguna en la Judicatura de Puerto

Rico. Ello, sin embargo, no es óbice ni impedimento para que ejerzamos nuestra misión institucional y adoptemos las medidas disciplinarias que consideremos apropiadas de acuerdo con las circunstancias peculiares del caso.

Reiteramos nuestro compromiso de velar por que las actuaciones de los miembros de la Judicatura del país "respondan a normas de conducta que honren la integridad e independencia de su ministerio y estimulen el respeto y la confianza en la judicatura". Canon I de Ética Judicial, *supra*. Las actuaciones del querellado, si bien no fueron dolosas, resultaron contrarias a los postulados éticos que exigen proyectar una imagen de imparcialidad a todo magistrado que integra nuestro sistema de justicia.

Por otro lado, conforme con lo determinado por el Comisionado Especial, antes de la presente querella, Campoamor Redín se había destacado por realizar una labor de excelencia en su gestión profesional como abogado y juez. Las evaluaciones como Juez Superior que realizaran comités de este Tribunal y de la Oficina de Administración de los Tribunales así lo corroboran. A la luz de todas estas circunstancias, procede limitar nuestra sanción a una censura enérgica por sus actuaciones. Nuestra determinación deberá servir de advertencia contra futuras actuaciones que denoten el grado de imprudencia que reflejaron las aquí discutidas. En tales casos las sanciones serán más severas.

*Se dictará la sentencia correspondiente.*

El Juez Presidete Señor Andréu García se inhibió. El Juez Asociado Señor Rebollo López no intervino.