EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | Querella |
|---|---|
| Hon. Pedro J. Martínez González Juez Municipal del Tribunal de Primera Instancia | 2000 TSPR 96 |

Número del Caso: AD-1998-03

Fecha: 26/junio/2000

Oficina del Procurador General:

       Hon. Gustavo A. Gelpi
       Procurador General
       Lcda. Ivonne Casanova Pelosi
       Procuradora General Auxiliar

Abogados de la Parte Querellada:

       Lcdo. Luis R. Santini Gaudier
       Lcdo. Pablo Colón Santiago

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hon. Pedro J. Martínez González

                 Juez Municipal del Tribunal de

Primera Instancia                   AD-1998-03

PER CURIAM

San Juan, Puerto Rico a 26 de junio de 2000

I

El Lcdo. Pedro J. Martínez González (en adelante Juez Martínez González o Martínez González o querellado) fue juramentado Juez Municipal el 16 de julio de 1997, y asignado a la región judicial de Ponce. Sólo siete meses después, la Hon. Elba Rosa Rodríguez Fuentes, Jueza Administradora de la Región de Ponce, (en adelante Jueza Administradora) prestó una declaración jurada narrando varios incidentes protagonizados por el querellado que violaban los Cánones de Ética Judicial. La Jueza Administradora

expresó que había informado lo acontecido a la Directora Administrativa de los Tribunales, Lcda. Mercedes Marrero de Bauermeister, y que ésta le había ordenado llevar a cabo una investigación. Ese mismo día, el 5 de febrero de 1998, el Juez Presidente del Tribunal Supremo le informó al Juez Martínez González que se había iniciado una investigación administrativa sobre su conducta y desempeño judicial. Se le suspendió de empleo, con paga, y se relevó de su designación como juez en Ponce.

El 20 de octubre de 1998, el Procurador General presentó querella imputándole al Juez Martínez González cinco (5) cargos por violar los Cánones I, II, XIV, XVI y XVII de Ética Judicial.[1] El querellado presentó contestación a la querella el 30 de noviembre de 1998, negando haber violado los Cánones de Ética Judicial. Solicitó la desestimación y el archivo de la querella, y la restitución a su cargo.

La vista del caso se celebró en los días 21 y 22 de abril de 1999. Así las cosas, la Comisión concedió a ambas partes hasta el 24 de mayo

---

[1] Cabe señalar que del informe de investigación preliminar hecho por la Oficina de Asuntos Legales de la Administración de Tribunales surge que el 10 de febrero de 1998, se le informó al querellado que se había iniciado una investigación administrativa relacionada con el procedimiento de **separación por razón de salud**. Así las cosas, el 30 de junio de 1998 la Comisión de Disciplina y de Separación por Razón de Salud de Jueces (en adelante la Comisión) recibió de la Directora Administrativa de los Tribunales el informe investigativo que había preparado en torno a la conducta del querellado. Por determinación administrativa del Presidente de la Comisión, se le refirió el caso a la Comisionada Asociada, quien dictaminó que **había causa para presentar la correspondiente querella** contra el Juez Martínez González.

El 30 de agosto de 1998, el Procurador General presentó una "Petición de Separación" por razón de incapacidad mental y solicitó a la Comisión que aceptara la petición en sustitución de la querella solicitada. Como la petición de separación no venía avalada con documento alguno que la justificara, más allá de los récords médicos del querellado que tenían más de veinticinco (25) años, la Comisión no la aceptó, y **reiteró la necesidad de presentarse querella**.

Las "Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones de Puerto Rico", según revisadas en octubre de 1999, (en adelante Reglas de Procedimiento) proveen el procedimiento para quejarse sobre actuaciones específicas del juez(a) que puedan conllevar acción disciplinaria o para pedir la separación por razón de salud. Como ya expresáramos, en el caso ante nos el procedimiento se originó como uno de separación, pero luego que la Comisión denegó dicha petición por basarse en prueba remota y ordenó al Procurador a presentar una querella, se comenzó un proceso disciplinario por actuaciones específicas del querellado **y no por razón de salud**.

de 1999 para presentar memorandos que analizaran la prueba y derecho aplicable, y veinte días (20) adicionales (o sea, hasta el 10 de junio de 1999) para memorandos de réplica, si los estimaban necesarios. Los términos transcurrieron sin que las partes presentaran memorando alguno, por lo que el caso quedó sometido a la consideración de la Comisión.

La Comisión emitió una resolución el 22 de septiembre de 1999,[2] recomendando que, por la gravedad de los hechos imputados y probados, se destituyera a Martínez González de su cargo de Juez Municipal. Los hechos se circunscriben en cuatro (4) incidentes clasificados por la Comisión como Casos 1, 2,[3] 3 y 4. Por estimar que el evento que se narró en el Caso 2 constituye una expresión del querellado en el transcurso de una conversación casual en compañía de otros jueces, conversación que no sacude ninguno de los deberes ministeriales ni éticos judiciales, no incluiremos dicho caso en la discusión de los cargos.

A.


El Caso 1 consta de unas expresiones hechas por el querellado en una vista presidida por él. Durante el procedimiento, el Juez Martínez González le gritó a una persona que si no se callaba lo iba a mandar "a la j---- cárcel" (letras omitidas). Se refirió, durante la misma vista, a una testigo como mentirosa, y le indicó a un abogado que si

---

[2] Por esta Resolución contener determinaciones de hecho y su correspondiente recomendación, la consideraremos como el informe de la Comisión. Regla 33 de Procedimiento.

[3] Por estimar, al igual que la Comisión, que el incidente del Caso 2 constituye una mera expresión del querellado en el transcurso de una conversación casual en compañía de otros jueces, no incluiremos dicho caso en la discusión de los cargos.

La Comisión lo expresó así, y nosotros lo volvemos a repetir, "en cuanto al Caso 2, no hay prueba de violación alguna a los Cánones de Ética Judicial. Los intercambios en la cafetería del Centro Judicial de Ponce no trascendieron al público, y por lo tanto no pudieron minar la confianza pública en la judicatura". Véase pág. 18-19 del Informe de la Comisión.

traía a ciertos funcionarios como prueba testifical "los iba a pasar por la piedra". El propio querellado aceptó en la contestación a la querella haber pronunciado ciertas palabras ofensivas en el contexto antes indicado.

B.

El Caso 3 se refiere a cuando el querellado hizo renunciar a una testigo a su empleo. La prueba demostró que el Juez Martínez González le exigió a una testigo "que renunciara a su empleo porque si no lo hacía presentaría cargos contra ella por falsificación y fraude". La testigo, enfatizó el querellado, debía tomar una decisión en veinte (20) minutos. El caso ante la consideración del querellado trataba sobre la custodia de unos menores, que alegadamente habían sido sacados indebidamente del estado de Nueva York por la madre de éstos. Aparentemente el padre se encontraba en Puerto Rico tratando de localizar a sus hijos, y recurrió al tribunal en busca de apoyo.

Del otro lado, la madre aparentemente temía por su seguridad personal y la de sus hijos, y no quería que el padre los localizara. La testigo en cuestión, prima de la madre de los menores, intervino para ayudar a su prima a obtener unos récords escolares en Nueva York, para así poder matricular a los niños en la Escuela Aurea Rivera Collazo, en Ponce. La solicitud de récords se hizo en el formulario oficial de la Escuela Rivera Collazo, pero se envió por fax desde la Escuela de Bellas Artes, donde la testigo trabajaba. Ésta tachó el encabezado que decía Escuela Rivera Collazo y le puso el de la Escuela de Bellas Artes. Todo esto lo hizo para evitar que el padre localizara a la madre y a sus dos hijos.

El padre se enteró de la intervención de la testigo, acudió al tribunal y así lo informó. El Juez Martínez González llamó por teléfono a la escuela donde la testigo trabajaba para citarla al tribunal. Ésta compareció y el querellado le dijo en corte abierta que

se le podían formular cargos por fraude, falsificación y dos delitos más que ésta no recordaba al momento de testificar. El Juez Martínez González le ofreció dos alternativas: aceptar los cargos o renunciar a su trabajo. Le concedió veinte (20) minutos para decidir. La testigo fue conducida a un salón pequeño, donde el querellado le repitió las alternativas. Ante las circunstancias que la rodeaban, la testigo decidió renunciar a su trabajo. El querellado le recomendó que indicara en la carta que la razón de la renuncia era por cuestiones de salud. Una vez firmada la carta en manuscrito, una secretaria del tribunal la transcribió. La testigo firmó la versión mecanografiada. El Juez Martínez González también instruyó a la supervisora de la testigo, que estaba presente en la vista, que aceptara la renuncia firmando la carta mecanografiada.

Unos días más tarde, la Jueza Administradora, citó a la testigo y dejó sin efecto las actuaciones del querellado.

En la contestación a la querella, Martínez González alegó que procedió de esa manera pues entendió que la actuación de la testigo resultaba ser una clara obstrucción a la justicia. La Comisión, sin embargo, entendió que el querellado había adjudicado la ilegalidad de la conducta de la testigo, y sin ulteriores procedimientos había decidido imponer la sanción que le pareció apropiada. Concluyó la Comisión que Martínez González había usado su posición de juez para inducir a una persona a creer que estaba actuando dentro del marco de autoridad que le confiere su cargo, y la llevó a hacer lo que de otra forma no hubiese hecho ni hubiese tenido que hacer.

### C.

El Caso 4 se refiere a un incidente ocurrido en una vista presidida por el querellado. El procedimiento era uno sobre orden protectora bajo la legislación vigente de violencia doméstica. La señora que solicitó la orden protectora acudió acompañada con una

intercesora de un albergue para mujeres víctimas de violencia doméstica. Al surgir la necesidad de citar al compañero de la señora, ésta indicó que sentía temor porque su compañero se ponía violento en sala. El querellado entonces sacó su arma de fuego —"una pistola niquelada"— y apuntó con ésta hacia una silla vacía que se encontraba a su mano izquierda. Mientras apuntaba dijo: "Esto es lo que tenemos si se pone guapo".

En su contestación a la querella, el Juez Martínez González aceptó los hechos imputados en este Caso, pero alegó que aunque "pueda constituir una irregularidad", no constituyó peligro, ni amenaza, ni delito. Alegó que su arma nunca estuvo cargada pues ésta carecía de seguro y, por ende, se podía disparar sola.

II

Luego de analizar detenidamente el expediente y el informe sometido por la Comisión, resolvemos que, a la luz de la gravedad de la conducta imputada, **procede la destitución inmediata** del querellado como Juez Municipal. Veamos.

III

Los tres (3) Casos narrados anteriormente dieron base a los cinco (5) cargos imputados al querellado por violación a los Cánones de Ética Judicial. Para facilitar el análisis, discutiremos cada incidente por separado a la luz de los cargos que se le imputaron al querellado. No obstante, para la imposición de la sanción consideraremos todos los incidentes en conjunto a los fines de demostrar que la serie de irregularidades incurridas por el Juez Martínez González sí justifica su destitución, "ya que ello demuestra un patrón de conducta impropio e incompatible con la función judicial". *In re* Jackson Sanabria, 97 D.P.R. 1, 4 (1969). Debemos puntualizar, además, que **"cada falta** de un

funcionario de justicia en el desempeño de su cargo es una herida al Sistema [Judicial], y avanza como onda concéntrica para lesionar el buen nombre y el prestigio de la [Rama Judicial]". *In re* Feliciano, 106 D.P.R. 806, 809 (1978).

A.

El incidente que dio base al Caso 1 contraviene los postulados de los Cánones de Ética Judicial I, II, XIV, XVI y XVII. En síntesis, el Canon I expresa la importancia de que con su conducta los jueces ayuden a mantener la fe del pueblo en la justicia. Éstos deben velar por que sus actuaciones respondan a normas de conducta que honren la integridad e independencia de su ministerio y estimulen respeto y confianza en la judicatura.[4]

El Canon II dispone, en lo pertinente, que el juez debe ser laborioso, **prudente**, **sereno**, **imparcial** y cuidadoso en la interpretación de la ley para el cabal desempeño de sus funciones. El Canon XIV establece que el juez es partícipe y actor principal en el esclarecimiento de la verdad siempre que no vulnere la imparcialidad que su alto oficio reclama. Éste debe abstenerse de unirse en solidaridad con cualesquiera de las partes mediante interrogatorios injustificados, **pronunciamientos sobre los méritos de la causa o comentarios impropios o perjudiciales**.

De otra parte, el Canon XVI ordena al juez ser considerado y **respetuoso con los abogados, testigos, jurados, funcionarios del tribunal y todo el que comparezca ante él**. Finalmente, el Canon XVII dispone que éste mantendrá su actitud general, manifestaciones y el tono de su voz **dentro de la debida propiedad y circunspección sin mostrar impaciencia o severidad excesiva. Tampoco hará comentarios ni gestos ajenos** al proceso judicial.

---

[4] Véase, *In re* Calzada Ramos, 124 D.P.R. 411, 425-426 (1989).

La utilización de palabras soeces durante una vista que el propio querellado presidía trastocan, de por sí, los Cánones antes mencionados. La situación se agrava al estos comentarios estar dirigidos a testigos, abogados y personas presentes en la vista. La manifestación del querellado sobre la mendacidad de una testigo mientras ésta testificaba, su expresión en cuanto a unos testigos de "pasarlos por la piedra" si eran utilizados y las expresiones de palabras soeces vertidas en el proceso, definitivamente vulneran la fe del pueblo en la justicia y deshonran la integridad e independencia del ministerio que ejerce (Canon I). Dicha conducta demuestra imprudencia, parcialidad y falta de serenidad (Canon II). Constituye además comentarios impropios o perjudiciales (Canon XIV); y, una extralimitación de la debida propiedad y circunspección en las manifestaciones y tono de voz exigidos por el Canon XVII a todo juez. El querellado claramente demostró una falta de consideración y de respeto hacia las partes, testigos, y abogados relacionados con los procedimientos que estaban ante su consideración, elementos exigidos por el Canon XVI.

B.

El Caso 3, sobre la custodia de los menores, refleja una gravedad que trastoca violentamente los pilares de integridad y justicia propios de nuestro magisterio. La intervención impropia del querellado con la testigo mediante una citación por la vía telefónica, la amenaza de utilizar el procedimiento criminal en su contra y la presión indebida para que la testigo renunciara a su empleo constituyó, como mínimo, un ejercicio del poder judicial represivo que no fomenta la confianza del Pueblo en la rama judicial (Canon I).[5]

_____

[5] Sobre violación del Canon I por amenazar con castigar a un policía, véase _In re_ Marrero Torres, 113 D.P.R. 113, 114 (1982). Determinamos en aquel momento que la actuación del juez querellado

La imprudencia y parcialidad demostrada por el querellado contra la testigo, quien era la prima de la madre de los menores, una parte en el pleito, trastocan los parámetros del Canon II. La actuación del Juez Martínez González no propició, al teñirse de parcialidad, el descubrimiento de la verdad, base esencial de la justicia (Canon XIV).[6] La presión puesta sobre la testigo para que renunciara de su empleo demostró una grave falta de consideración hacia las personas que comparecen ante el tribunal (Canon XVI). Dicha presión constituyó un grave menosprecio por las consecuencias alarmantes que trae el obligar a renunciar a la fuente de su sustento diario. La imposición adicional de un irrazonable límite de tiempo, veinte (20) minutos, para tomar una la decisión tan seria y además bajo la amenaza de someterle cargos criminales si no renunciaba al empleo, demuestra, como mínimo, la impaciencia proscrita por el Canon XVII. Inequívocamente, la actuación del querellado constituyó "comentario y gesto ajeno al proceso judicial" según lo prohibe dicho Canon.

La presión que ejerció el querellado contra la testigo fue una intervención indebida con ésta. Esta actuación infiere la más grave lesión posible al procedimiento judicial de parte que quien más obligado está a velar por la imparcialidad y pureza de los procedimientos. "Constituye una herida mortal dirigida al corazón del procedimiento judicial: **la veracidad de la prueba**". *In re* Jackson Sanabria, supra, págs. 6-7.

C.

---

Marrero Torres fue ilegal, altamente impropia y meritoria de destitución.

[6] En *In re* Hernández Enríquez, 115 D.P.R. 472 (1984), se destituyó a un juez cuando incurrió en conducta reñida con la ética judicial al aparentar interés inusitado en el caso, demostrando falta de objetividad y dando la apariencia de favorecer a una de las partes.

Desenfundar un arma de fuego en una sala de justicia para demostrar la manera en que el juez impondría el orden violó los Cánones I, II, XVI y XVII. ¿Qué fe en la justicia puede tener un Pueblo cuando se persigue obtener el orden mediante la amenaza de violencia? (Canon I). Como bien señala la Resolución de la Comisión, la actuación del Juez Martínez González proyectó una visión de "justicia a la vaqueta", más propia de una corte de cantina, ubicada en tierra de nadie, de una película del antiguo oeste norteamericano. La actitud coercitiva del querellado protagonizó un ejercicio indebido de autoridad contrario al Canon II; no fue prudente ni sereno en el desempeño de sus funciones.

La mujer que presentó la acción contra su compañero, precisamente para buscar refugio de un ambiente alegadamente hostil, se encontró en corte con un ambiente violento. Esto constituye una grave falta de consideración a una parte y testigo en un proceso, una muestra de impaciencia y severidad excesiva en clara violación de los Cánones XVI y XVII.

IV

Dentro de nuestra organización política, social y jurídica, la figura del juez ocupa un lugar de singular importancia. Su nombramiento es producto del consenso habido entre las Ramas Legislativa y Ejecutiva del gobierno, las cuales depositan en ellos la confianza de nuestro Pueblo con la esperanza de que la administración de la justicia se llevará a cabo por personas cuya conducta sea intachable. *In re* Robles Sanabria, AD-98-02, res. el 22 de junio de 2000, 2000 T.S.P.R. 94. A esas ramas de gobierno les corresponde el primer e importantísimo cedazo para nombrar candidatos idóneos. Nos corresponde a nosotros, la Rama Judicial, cerciorarnos que esa idoneidad sea la expresión constante en la conducta de los jueces.

Por consiguiente, los jueces están obligados a exhibir un comportamiento que manifieste entereza, convicción e imparcialidad.

Tal exigencia está plasmada en el Código de Ética Judicial, que establece las normas de conducta que deben guiar el desempeño de su alto ministerio. *In re* Campoamor Redín, 96 J.T.S. 5, pág. 576.

La destitución de un juez procede cuando éste incurre en un patrón de conducta impropia e incompatible con su cargo, máxime cuando este proceder va acompañado del lenguaje impropio y soez o conducta agresiva, beligerante y abusiva. *In re* Nevárez Zavala, 123 D.P.R. 511, 525 (1989).

Las actuaciones del Juez Martínez González demostraron claramente la utilización de lenguaje impropio (Caso 1), de conducta abusiva (Caso 3) y conducta opresiva y agresiva (Caso 4). Dichas actuaciones resultan ser totalmente incompatibles con el cargo de juez. Procede la destitución inmediata del querellado.[7]

Se emitirá la correspondiente sentencia.

---

[7] Para cuando se hace necesaria la destitución, véase, *In re* Calzada Llanos, 124 D.P.R. 411, 426 (1989).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hon. Pedro J. Martínez González
Juez Municipal del Tribunal de
Primera Instancia                    AD-1998-03

SENTENCIA

San Juan, Puerto Rico a 26 de junio de 2000

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integral de la presente, se decreta la destitución inmediata del querellado Pedro J. Martínez González del cargo de Juez Municipal del Tribunal de Primera Instancia. Dicha destitución será efectiva a partir de la fecha de la notificación de esta Sentencia.

Notifíquese a la Directora Administrativa de la Oficina de Administración de los Tribunales.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García está inhibido.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo