EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| Federico Quiñones Artau | 2015 TSPR 84 |
| | 193 DPR ____ |

Número del Caso: AD-2013-1

Fecha: 29 de junio de 2015

Oficina de Administración de los Tribunales:

      Lcda. Cristina Guerra Cáceres
      Lcda. Rosa M. Cruz Niemiec

Abogados de la Parte Querellada:

      Lcdo. Harold D. Vicente González
      Lcdo. Roberto Alonso Santiago
      Lcdo. Héctor Ferrer Ríos
      Lcdo. Francisco Acevedo Padilla
      Lcdo. Pedro A. Rivera Sabater
      Lcdo. Antonio M. Sagardía De Jesús

Materia: Conducta Profesional - Destitución inmediata del cargo de juez por violación a los Cánones 8, 9, 11, 13 y 14 de Ética Judicial.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Federico Quiñones Artau

AD-2013-1

PER CURIAM

En San Juan, Puerto Rico, a 29 de junio de 2015.

Nos corresponde analizar una querella que presentó la Oficina de Administración de Tribunales en contra del Juez Federico Quiñones Artau. Luego de evaluar la querella, el informe de la Comisión de Disciplina Judicial y los alegatos de las partes, decretamos la destitución inmediata del magistrado.

I.

El Sr. Federico Quiñones Artau juramentó al cargo de Juez Superior el 18 de julio de 2007. En agosto de 2008 lo asignaron al Centro Judicial de Arecibo como juez de una sala criminal dedicada a la vista preliminar, donde permaneció por alrededor

de quince meses. Mientras estuvo a cargo de esa sala ocurrieron varios incidentes por los que algunos fiscales y agentes del orden público adscritos a la División de Drogas y Armas de la Policía de Puerto Rico presentaron varias quejas ante el Fiscal de Distrito de la Región de Arecibo, Wilson R. González Antorgiorgi. Dos de los incidentes desembocaron en quejas formales presentadas en contra del Juez: una de ellas por una carta que envió el entonces Superintendente de la Policía, el Sr. Héctor Pesquera, al entonces Juez Presidente del Tribunal Supremo, Hon. Federico Hernández Denton, y otra por el Sgto. Víctor M. Quiñones Ortiz.

Posteriormente, el 19 de julio de 2010, el Juez Quiñones Artau fue trasladado al Centro Judicial de Bayamón como juez de una sala civil en el Tribunal de Primera Instancia. Mientras el Juez Quiñones Artau realizaba sus funciones en el Centro Judicial de Bayamón, se suscitó un incidente que también resultó en una queja formal en su contra. A continuación detallamos esas tres quejas.

**A. Queja presentada por el Juez Presidente**

La queja presentada por el Juez Presidente, Hon. Federico Hernández Denton surgió a raíz del caso <u>Pueblo de Puerto Rico v. William Rodríguez Vargas</u>, Caso Núm.: V/P2009-1052. Ese caso comprendía una investigación criminal que realizó el agente encubierto Joel Núñez Fernández durante el año 2008 y que contenía grabaciones

en video. En la vista preliminar, el agente Núñez Fernández declaró que existía una grabación en video que reflejaba la totalidad de lo que él testificó en sala y que el video no había sido alterado o editado. Ese video se mostró en la sala mientras le realizaban preguntas al agente Núñez Fernández acerca de su contenido. El Juez Quiñones Artau admitió el video en evidencia.

En una vista posterior, celebrada el 18 de junio de 2010, uno de los abogados de defensa argumentó por primera vez que existía la posibilidad de que el video sobre el cual declaró el agente Núñez Fernández hubiese sido editado o alterado. El Juez Quiñones Artau observó nuevamente el video y concluyó que, en efecto, fue editado o alterado. Así, determinó no causa por entender que el video no reflejaba lo que el agente Núñez Fernández declaró bajo juramento. Luego de la determinación de no causa en el caso, expresó que se proponía encontrarle causa por perjurio al agente Núñez Fernández. El fiscal Juarbe Molina, quien estaba a cargo del caso, solicitó tiempo adicional para expresarse por escrito sobre el asunto del perjurio, el cual se le concedió.

El Juez Quiñones Artau emitió una resolución en la que hizo constar que no existía causa probable y expidió un Auto de Excarcelación del imputado, el Sr. William Rodríguez Vargas. Además, como parte de sus observaciones expresó lo siguiente: "[v]ideo fue editado. Tribunal encontró al testigo en perjurio; fiscal solicitó la

oportunidad de radicar escrito relacionado al perjurio". Informe de la Comisión, pág. 21. El agente Núñez Fernández, quien no estuvo presente en la vista donde se le imputó el perjurio, se enteró de lo ocurrido varios días más tarde.

El 24 de junio de 2010, el Juez Quiñones Artau se comunicó con el fiscal Juarbe Molina y le indicó que preparara un proyecto de denuncia contra el agente Núñez Fernández. El Ministerio Público optó por no presentar el proyecto de denuncia y, en su lugar, presentó una moción en cumplimiento de orden que exponía la posición de los fiscales sobre la determinación del perjurio. En ese escrito se cuestionó la facultad del Juez Quiñones Artau para, luego de determinar no causa en una vista preliminar, constituirse en magistrado o juez instructor con el propósito de determinar si el agente que testificó sobre el video incurrió en conducta delictiva, si existía causa probable para su arresto y si se continuaría un proceso penal contra ese agente.

El 30 de junio de 2010, se celebró una vista en la cual el fiscal Juarbe Molina argumentó que, conforme la Ley Núm. 41 de 9 de marzo de 1911, 33 LPRA sec. 430, una vez culmina el caso ante el juez, este pierde la facultad de imputar desacato por perjurio. Añadió que, ante esa situación, lo que procede es referir el asunto al Secretario de Justicia para que se realice la investigación correspondiente. El Juez Quiñones Artau no

acogió ese argumento. Concedió hasta las 2:00 pm. del día siguiente para que el agente Núñez Fernández compareciera y se continuara con el proceso para encontrarlo incurso en desacato. De igual forma, indicó que al día siguiente entregaría un acta a esos efectos y diligenciaría la orden de arresto contra el agente Núñez Fernández.

El fiscal Juarbe Molina notificó el asunto a la Oficina de la Procuradora General, quien presentó una petición de certiorari ante el Tribunal de Apelaciones junto con una moción en auxilio de jurisdicción para que paralizaran los procedimientos. El 1 de julio de 2010, el Tribunal de Apelaciones ordenó mediante una resolución la paralización de los procedimientos ante el Tribunal de Primera Instancia. Esa resolución se notificó ese mismo día durante la vista que presidía el Juez Quiñones Artau para diligenciar la orden de arresto contra el agente Núñez Fernández.

Al recibir la orden, el Juez Quiñones Artau llamó al fiscal Juarbe Molina para que pasara por su oficina. Según las declaraciones del fiscal Juarbe Molina, quien se presentó junto al fiscal Mujica de León en la oficina del Juez Quiñones Artau, el juez le mostró la resolución del foro apelativo intermedio y expresó: "recuerda que hay un día detrás del otro y que esta eventualmente me la vas a pagar". Informe de la Comisión, pág. 24.

El mismo día de la vista, y a pesar de que el Tribunal de Apelaciones ordenó la paralización de los

procedimientos, el Juez Quiñones Artau emitió una resolución con fecha de 1 de julio de 2010 en la cual determinó que el agente Núñez Fernández cometió desacato por perjurio en corte abierta según dispone la Ley Núm. 41, supra, y expidió una orden de arresto en su contra. Le impuso una fianza de $10,000 con el beneficio del 10%. Además, señaló una vista para el 20 de julio de 2010 en la cual requería la comparecencia del agente Núñez Fernández. Sin embargo, no fue hasta algún tiempo después que el fiscal Juarbe Molina se enteró de esas órdenes.

Eventualmente, el Tribunal de Apelaciones denegó la expedición del certiorari en ese caso por entender que el foro primario no abusó de su discreción y que la Procuradora General carecía de legitimación para presentar el recurso. Posteriormente, se presentó un recurso de certiorari ante este Tribunal que se declaró no ha lugar. Tampoco acogimos una moción de reconsideración.

Por otra parte, el 2 de julio de 2010, el Fiscal de Distrito presentó una moción para que el Juez Quiñones Artau se inhibiera en todos los casos relacionados a sustancias controladas y armas de fuego. Argumentó que el Juez Quiñones Artau estaba prejuiciado en cuanto a la credibilidad que le otorgaba a los agentes de la División de Drogas y Narcóticos de la Policía de Puerto Rico que intervenían en esos casos. Incluyó varias expresiones que hizo el Juez Quiñones Artau en la sala, según le fueron informadas al Fiscal de Distrito en diferentes quejas que

habían presentado fiscales y policías durante alrededor de un año. El 21 de julio de 2010, el Juez Administrador Vissepó Vázquez denegó la solicitud de inhibición. Indicó que el asunto era académico ya que el Juez Quiñones Artau había sido trasladado al Tribunal de Primera Instancia, Sala de Bayamón, el 19 de julio de 2010.

Aunque fue trasladado a Bayamón, el Juez Quiñones Artau continuó realizando esfuerzos para encontrar al agente Núñez Fernández incurso en desacato por perjurio. El 8 de junio de 2012, se comunicó con el Sgto. José Román Vega, quien supervisaba la oficina de agentes encubiertos del área de Arecibo en ese entonces, y le informó que el agente Núñez Fernández debía comparecer a su sala en el Tribunal de Primera Instancia de Bayamón el 11 de junio de 2012. El sargento Román Vega le notificó ese hecho al agente Núñez Fernández, quien se propuso realizar las gestiones para buscar representación legal.

El 11 de junio de 2012, el Juez Quiñones Artau se comunicó nuevamente con el sargento Román Vega para inquirir sobre la falta de comparecencia del agente Núñez Fernández y le pidió que le informara que el asunto se podía resolver en una vista y que trajera $1,000 porque le iba a imponer una fianza "bajita". Además de comunicarle ese mensaje al agente Núñez Fernández, el sargento Román Vega le informó al fiscal Juarbe Molina de su conversación con el Juez Quiñones Artau.

El 12 de junio de 2012, el fiscal Juarbe Molina y el Fiscal de Distrito presentaron ante el Tribunal de Primera Instancia de Arecibo una moción para archivar la determinación de causa para arresto por perjurio contra el agente Núñez Fernández. Ese mismo día, la Jueza Mabel Ruiz Soto celebró una vista para atender la moción y emitió una resolución declarándola ha lugar. Indicó que la única expresión sobre perjurio o desacato contra el agente Núñez Fernández que obraba en el expediente era una resolución de la Vista Preliminar de 18 de junio de 2010 y que, según lo que surgía del expediente, no se continuó con un proceso de perjurio o desacato. Por ello, la Jueza Ruiz Soto archivó con perjuicio, al amparo de la Regla 247 de Procedimiento Criminal, 34 LPRA Ap. II R. 247, el caso de perjurio en contra del agente Núñez Fernández.

Posteriormente, y ya archivado el caso de perjurio contra el agente Núñez Fernández, el Juez Quiñones Artau se comunicó una vez más con el sargento Román Vega. Este último le informó que la Jueza Ruiz Soto archivó el caso. El Juez Quiñones Artau le expresó con un tono de molestia que ahora no iba a imponerle fianza al agente Núñez Fernández, que iba a meter preso al fiscal Juarbe Molina por obstrucción y que "se esta[ban] poniendo potrones". Informe de la Comisión, pág. 29. Entonces, el Juez Quiñones Artau llamó en conferencia al Fiscal Jorge I. Colina Pérez, supervisor del fiscal Juarbe Molina, y le narró lo ocurrido. Mientras el sargento Román Vega

escuchaba la conversación, el Juez Quiñones Artau requirió la comparecencia del fiscal Juarbe Molina en su sala en el Tribunal de Primera Instancia de Bayamón ese mismo día e indicó que, de no comparecer, lo metería preso. No obstante, el fiscal Juarbe Molina no compareció porque no fue citado formalmente y porque el caso del agente Núñez Fernández había sido archivado.

Por su parte, el Juez Quiñones Artau se comunicó con la entonces Jueza Administradora de la Región Judicial de Bayamón, Hon. Raquel Irlanda Blassini, y le comentó sobre su interés en celebrar una vista sobre el caso del agente Núñez Fernández. La Jueza Irlanda Blassini le indicó que era en el Tribunal de Arecibo donde correspondía la celebración de esa vista. Luego de varias gestiones para coordinarla, el 19 de junio de 2012, el Juez Quiñones Artau emitió un acta donde hizo constar que el agente Núñez Fernández cometió desacato por perjurio en corte abierta el 18 de junio de 2010 y ordenó la citación de ese agente so pena de desacato.

El Lcdo. William Maisonet Rodríguez, quien asumió la representación legal del agente Núñez Fernández, presentó varias mociones en el Tribunal de Primera Instancia de Arecibo mediante las que solicitó que se desestimara toda acción en contra del agente porque la Jueza Ruiz Soto había archivado con perjuicio el caso y que dicha determinación era final y firme. El Juez Quiñones Artau las declaró sin lugar.

El 9 de noviembre de 2012, el juez Quiñones Artau se trasladó a la Sala Superior del Tribunal de Arecibo y celebró la vista de desacato en contra del agente Núñez Fernández, quien estuvo acompañado de su abogado, el Lcdo. William Maisonet Rodríguez. El sargento Román Vega compareció y brindó su testimonio de lo ocurrido. El agente Núñez Fernández también brindó su testimonio. El Juez Quiñones Artau solo lo interrogó en cuanto a asuntos relacionados con la participación de los fiscales en los trámites.

Así, el Juez Quiñones Artau determinó que el agente Núñez Fernández incurrió en desacato sumario por perjurio y le impuso una multa de $100. El agente Núñez Fernández decidió pagar la multa y desistió de solicitar revisión de la determinación del Juez Quiñones Artau por no contar con los recursos económicos para ello. Como consecuencia de esto, el agente Núñez Fernández fue asignado al Cuartel General de la Policía de Puerto Rico para realizar labores administrativas, ya que ante una condena por perjurio no gozaría de credibilidad en los tribunales. A raíz de esto se suspendieron varias investigaciones de tráfico de drogas y armas en las que este se mantenía participando como agente encubierto.

En otra vista preliminar que presidía el Juez Quiñones Artau se suscitó un incidente con un grupo de estudiantes de Justicia Criminal que se encontraban en la sala. En esa vista preliminar testificó el agente Víctor Mora Pérez de

la División de Armas y Drogas de Arecibo. Concluida la presentación de la prueba, el Juez hizo una determinación de no causa. Apéndice, pág. 981. Estando todavía el agente Mora Pérez en la sala, el Juez Quiñones les preguntó a los estudiantes si alguno de ellos tenía alguna pregunta. Una estudiante alzó la mano y le preguntó por qué había determinado no causa.[1] El Juez Quiñones Artau le contestó: ¿Usted leyó el libro de Alejo Maldonado?, a lo que la estudiante dijo: "Sí, muy buen libro". Apéndice, págs. 982.[2] Entonces, el Juez Quiñones Artau le indicó: "Pues léalo otra vez". Íd. El libro del Sr. Alejo Maldonado trata sobre varios actos de corrupción en la Policía de Puerto Rico. Íd., págs. 982-983.

En otro incidente independiente, el 8 de junio de 2010 se celebró una vista preliminar en el caso Pueblo de Puerto Rico v. Ramón Cardona Cardona, el cual estaba a cargo de la Fiscal Vélez Alcaide. Durante la vista el Juez Quiñones Artau requirió la presencia del Fiscal de Distrito Wilson González Antorgiorgi. Una vez llegó el Fiscal González Antorgiorgi, el Juez Quiñones Artau se reunió en cámara con él y la Fiscal Vélez Alcaide para discutir varios asuntos relacionados con el caso. Cuando terminaron de hablar, el Juez Quiñones Artau le manifestó que no daba credibilidad a los agentes de la División de Drogas de Arecibo porque llevaban haciendo las mismas

---

[1] Véase, Apéndice, págs. 930-931.
[2] Véase, además, Apéndice, pág. 982.

declaraciones desde hacía treinta años desde que él laboraba como abogado de la Sociedad para la Asistencia Legal (SAL).[3] Expresó, además, que estaba cansado de que vinieran a decirle mentiras y que él era consciente de que sus decisiones eran revocadas por otros jueces, pero que él no estaba para combatir la criminalidad.

En otro caso criminal que atendió el Juez Quiñones Artau, el Fiscal Francisco Mujica de León intentó que se le permitiera argumentar su posición sobre el caso. El Juez Quiñones Artau se alteró y le llamó la atención diciéndole en tono de voz fuerte lo siguiente: "Te callas la boca, te callas la boca o sabes lo que te va".[4]

Un tiempo después, el Superintendente de la Policía, señor Pesquera, envió una comunicación con fecha de 11 de diciembre de 2011 al entonces Juez Presidente del Tribunal Supremo, Hon. Federico Hernández Denton, sobre la conducta del Juez Quiñones Artau. El Juez Quiñones Artau respondió que la queja que presentó el señor Pesquera en su contra era una "querella frívola", "sin juramentar, remota en tiempo, sin que le constara [sic] de propio y personal conocimiento y atacando el criterio de un juez y el principio de Independencia Judicial [...]". Informe de la Comisión, pág. 35. El Juez Presidente remitió el asunto a la Oficina de Asuntos Legales de la Oficina de

---

[3] Apéndice, págs. 812, 815-816. Véase, además, Apéndice, págs. 842, 847.
[4] Apéndice, pág. 844.

Administración de Tribunales conforme a la Regla 5(c) de Disciplina Judicial, 4 LPRA Ap. XV-B R. 5.[5]

**B. Queja presentada por el sargento Quiñones Ortiz**

El 9 de junio de 2010, se celebró una vista preliminar en la sala del Juez Quiñones Artau para el caso <u>Pueblo de Puerto Rico v. Xavier Melecio Ramírez</u>, Núm. VP-2010-1092-1094. Entre los testigos del Ministerio Público, declaró el sargento Quiñones Ortiz sobre una intervención que realizó con el imputado en el caso. Al finalizar el testimonio del sargento Quiñones Ortiz, el Juez Quiñones Artau le indicó que no podía permanecer en la sala y debía esperar afuera. Una vez el sargento abandonó la sala, según surge de la grabación de la vista preliminar, el Juez Quiñones Artau hizo las siguientes expresiones sobre su testimonio:

> El Tribunal quiere hacer unas expresiones antes de su determinación. Después de todo, el

---

[5] Esa Regla dispone lo siguiente:

> El Juez Presidente o la Jueza Presidenta, un Juez Asociado o una Jueza Asociada, el Director o la Directora, podrá solicitar a iniciativa propia y por escrito, una investigación sobre la conducta o capacidad de un juez o una jueza. Dicha solicitud se considerará como una queja, sin que sea necesario cumplir con los requisitos formales del inciso (b) de esta regla.

Por su parte, el inciso (b) de la Regla dispone, entre otras cosas lo siguiente:

> La queja cumplirá con los siguientes requisitos:
> [...]
> (2) Se formulará bajo juramento
> [...]

Tribunal Supremo ha dicho que el Juez no puede ser tan ingenuo para creer lo que otro no podría creer. El Tribunal entiende y a lo mejor estaríamos tentados, pero no vamos a cometer ese error, entendemos que el testimonio del Sgto. Víctor Ramos [sic] es increíble, inclusive mendaz y de falta de respeto y credibilidad al Tribunal. Este Tribunal no va a permitir que en esta Sala, esa silla testifical que es sagrada para el Tribunal, que es representación de los derechos de la ciudadanía de Puerto Rico, [...] la manchen personas sentándose aquí mintiendo. Porque eso es lo que ha hecho el sargento, el primer testigo que vino aquí. Este Tribunal determina; y le causa náusea y disgusto que vengan aquí a mentir. Si hay una intervención y se ocupó un arma pues mire cójala y decomísela y otro día lo podrá coger. Pero para combatir la criminalidad, el fin no justifica los medios. Mientras esté este Juez aquí, no va a permitir eso. No sé si es la primera vez, pero ya en la mente mía este sargento no tiene ninguna credibilidad. Se determina no causa. Informe de la Comisión, pág. 17.

Al enterarse de las expresiones que hizo el Juez Quiñones Artau en su ausencia, el sargento Quiñones Ortiz le informó lo ocurrido al Fiscal de Distrito. Este le ordenó a la fiscal encargada del caso, Fiscal Jennifer Cancio Arcelay, que preparara un informe sobre lo acontecido. El 10 de junio de 2010, el sargento Quiñones Ortiz presentó una queja en contra del Juez Quiñones Artau en la que relató el incidente y lo acusó de abusar de su poder al hacer expresiones deshonrosas contra su persona.

**C. Queja presentada por el Sr. Francisco Valdés Pérez.**

Mientras el Juez Quiñones Artau realizaba sus funciones como juez de una sala civil en el Tribunal de Primera Instancia, Sala de Bayamón, se suscitó un

incidente que también resultó en una queja formal presentada en su contra.[6]

El Sr. José M. Soler González y su esposa, la Lcda. Wanda I. Medina Rivera (en adelante, "esposos Soler-Medina") presentaron una demanda contra el señor Valdés Pérez. Alegaron que la licenciada Medina Rivera había contratado al señor Valdés Pérez para realizar gestiones de cobro extrajudiciales, ejecución de sentencias, dar seguimiento a planes de pago y facturación en casos de uno de los clientes de la licenciada Medina Rivera. Sin embargo, según los demandantes, la relación se deterioró porque, entre otras cosas, el señor Valdés Pérez utilizaba material de la oficina para hacerse pasar como abogado y socio de la licenciada Medina Rivera.

Por eso, el 4 de agosto de 2011, los esposos Soler-Medina presentaron una moción de orden protectora ex parte bajo la Regla 56.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 56.5. Solicitaron que el señor Valdés Pérez devolviera todos los expedientes legales que estuviesen bajo su posesión y que pertenecieran a la licenciada Medina Rivera. Solicitaron además que el señor Valdés Pérez se abstuviera de ir a las oficinas de la licenciada Medina, de realizar gestiones a su nombre y de utilizar el papel timbrado de su oficina. El 10 de agosto de 2011, el Juez Quiñones Artau accedió a la solicitud.

---

[6] Soler González y otros v. Valdés Pérez y otros, Civil Núm. DDP2011-0592 consolidado con el DDP2011-0844.

El señor Valdés Pérez compareció voluntariamente por derecho propio y presentó su contestación a la demanda. En una orden de 1 de septiembre de 2011, el Juez Quiñones Artau le indicó que debía comparecer mediante abogado y expresó lo siguiente:

> En primera instancia, le llama la atención al Tribunal que la parte demandada nunca solicitó permiso o autorización para comparecer por derecho propio.
>
> Examinada la moción radicada por el Sr. Francisco Valdés Pérez, el Tribunal entiende que existe un conflicto patente de interés para asumir [sic] su representación por derecho propio en forma responsable, adecuada y fuera de todo perjuicio e interés.
>
> El Tribunal no acepta, ni reconoce al Sr. Francisco Valdés Pérez que asuma su representación legal por derecho propio y se le concede treinta (30) días finales y firmes para comparecer con abogado y contestación a la demanda [sic], so pena de sanciones, incluyendo se le anote rebeldía. Informe de la Comisión, pág. 36.

Por su parte, los esposos Soler Medina, solicitaron la eliminación de las alegaciones del señor Valdés Pérez porque creaban confusión debido la forma redundante en que estaban redactadas. Alegaron que como no era abogado y ante la complejidad de las controversias, el trámite podía afectarse y dilatarse.

El señor Valdés Pérez solicitó reconsideración de la determinación de no permitirle comparecer por derecho propio y expresó que "no venía obligado a pedir permiso al Honorable Tribunal, al inicio del proceso de autorepresentarse y para someter al Honorable Tribunal [las mociones]". También presentó una demanda por derecho

propio sobre daños y perjuicios contra los esposos Soler-Medina. El Juez Quiñones Artau denegó la solicitud de reconsideración y ordenó al señor Valdés Pérez que se atuviera a la orden previamente emitida, so pena de sanciones. El señor Valdés Pérez presentó por derecho propio un recurso de _certiorari_ ante el Tribunal de Apelaciones para revisar la determinación del Juez Quiñones Artau de requerir su comparecencia mediante abogado. El foro apelativo intermedio no expidió el auto de _certiorari_.

Simultáneamente, los esposos Soler-Medina presentaron una moción para que se encontrara al señor Valdés Pérez incurso en desacato por incumplir con la orden protectora. Ante ello, el señor Valdés Pérez alegó que nunca le notificaron la orden protectora, por lo que debía dejarse sin efecto. Alegó además que el tribunal nunca adquirió jurisdicción sobre su persona porque compareció voluntariamente.

El 24 de octubre de 2011, el Juez Quiñones Artau concedió un término final de cinco días para que el señor Valdés Pérez compareciera con un abogado y entregara los expedientes como le fue ordenado. Le concedió, además, 30 días para que compareciera con un abogado. La orden se notificó el 31 de octubre de 2011. En esta misma fecha, los esposos Soler-Medina notificaron nuevamente al tribunal que el señor Valdés Pérez no había cumplido con la entrega de los expedientes. El 3 de noviembre de 2011,

el Juez Quiñones Artau lo citó a una vista a celebrarse el 30 de noviembre de 2011 para que mostrara causa por la cual no debía ser encontrado incurso en desacato.

Ante ello, el 4 de noviembre de 2011, el señor Valdés Pérez compareció una vez más sin abogado y presentó una moción al amparo de la Regla 63 de Procedimiento Civil, 32 LPRA Ap. V, R. 63, para recusar al Juez Quiñones Artau, la cual fue declarada no ha lugar. Días después, volvió a presentar una moción bajo esa regla y la acompañó con copia de una queja que presentó ante la Oficina de Administración de Tribunales (OAT) contra el Juez Quiñones Artau.

El día de la vista, el señor Valdés Pérez no compareció. Por eso, el Juez Quiñones Artau dictó una orden en su contra para que mostrara causa por la cual no debía ordenar su arresto y encontrarlo incurso en desacato por su incomparecencia. De igual forma, el Juez Quiñones Artau refirió el asunto de la recusación a la entonces Jueza Administradora del Tribunal de Bayamón, Irlanda Blassini. Esta, a su vez, lo refirió a la Jueza Enid Rodríguez Molina, quien denegó la solicitud de recusación.

El Juez Quiñones Artau señaló entonces una vista para el 8 de febrero de 2012. Unos días después, el señor Valdés Pérez presentó una moción ante la Jueza Irlanda Blassini para reconsiderar la determinación de la Jueza Rodríguez Molina. En esa moción, además, indicó que estaría fuera de Puerto Rico el día 8 de febrero de 2012,

fecha para la cual el Juez Quiñones Artau señaló la vista, y solicitó que la misma fuese pospuesta. Alegó, además, que consignó los expedientes de la licenciada Medina Rivera en la Secretaría del Tribunal Supremo. A esa moción, la Jueza Irlanda Blassini contestó lo siguiente: "Los Jueces Administradores no intervienen en las determinaciones judiciales. Deberá orientarse por un abogado". Informe de la Comisión, pág. 39.

El día de la vista, el señor Valdés Pérez, de nuevo, no compareció. Por ello, el Juez Quiñones Artau ordenó su arresto. Durante la vista, y dado que no se presentó en el trámite correspondiente, uno de los abogados de los esposos Soler-Medina mencionó que el señor Valdés Pérez notificó en la moción de reconsideración que había presentado que estaría fuera de Puerto Rico para esa fecha. La minuta disponía, entre otras cosas, lo siguiente: "Siendo las 2:40 p.m., el Tribunal ordena el arresto por desacato al Sr. Francisco Valdés. Se le impone una fianza de $10,000 sin el beneficio del 10% [...]". Informe de la Comisión, pág. 40.

En distintas fechas posteriores, el señor Valdés Pérez continuó, a pesar de las múltiples advertencias en contrario, con su patrón de presentar mociones por derecho propio. El Juez Quiñones Artau las atendió y en todas contestó que no había nada que disponer. En dos de ellas advirtió al señor Valdés Pérez de su incumplimiento con

las órdenes del tribunal y le recordó que no le había concedido el derecho a representarse por derecho propio.

El 27 de febrero de 2012, el Juez Quiñones Artau expidió una orden de arresto por desacato civil contra el señor Valdés Pérez por no comparecer a las vistas señaladas e incumplir con las órdenes del tribunal. Señaló una vista de seguimiento para el 14 de marzo de 2012.

Al enterarse de la orden de arresto en su contra, el señor Valdés Pérez presentó una moción urgente el 5 de marzo de 2012, expresando las razones por las cuales entendía que no incurrió en desacato. Ese mismo día se dirigió a la sala del Juez Quiñones Artau y solicitó una audiencia con él. El alguacil se retiró a revisar el expediente del señor Valdés Pérez y, al regresar, le pidió que lo acompañara al sótano del tribunal, donde se le entregó la orden y lo arrestaron. Ese mismo día, el Juez Quiñones Artau atendió la moción urgente que presentó el señor Valdés Pérez y expresó que el "[t]ribunal nunca le ha concedido el derecho a representarse por derecho propio". Informe de la Comisión, pág. 42.

El señor Valdés Pérez permaneció encarcelado durante nueve días. Según las declaraciones del señor Valdés Pérez ante la Comisión, el día de la vista de seguimiento ofreció excusas al tribunal e intentó explicar la razón de su última incomparecencia sin éxito alguno, pues el Juez Quiñones Artau no le permitió ofrecer aclaraciones. Durante esa vista, el Juez Quiñones Artau desestimó con

perjuicio la demanda de daños que había presentado el señor Valdés Pérez, ya que este no compareció mediante abogado según se le ordenó en numerosas ocasiones. El señor Valdés Pérez expresó que realizó varias gestiones para conseguir abogado y que ninguno quiso asumir su representación legal. El Juez se sostuvo en su determinación. Además, ordenó la excarcelación del señor Valdés Pérez y concluyó la vista con las siguientes expresiones: "[...] yo espero de ésta que usted haya aprendido y la próxima vez respete las órdenes del Tribunal y coopere con los compañeros [...]". Informe de la Comisión, pág. 43.

En una sentencia emitida el 19 de marzo de 2012, el Juez Quiñones Artau desestimó con perjuicio el caso en el que el señor Valdés Pérez figuraba como la parte demandante. Luego, el 30 de abril de 2012 dictó sentencia en el caso que presentaron los esposos Soler-Medina, y desestimó con perjuicio la reconvención que presentó el señor Valdés Pérez en ese caso por haber incumplido con las órdenes del tribunal. Además, declaró con lugar el desistimiento sin perjuicio de las alegaciones de la demanda sobre reclamaciones monetarias en ese caso y ordenó al señor Valdés Pérez abstenerse permanentemente de acudir a las oficinas de la licenciada Medina Rivera; realizar gestiones a nombre de la licenciada Medina Rivera, su bufete o sus clientes; utilizar papel timbrado del bufete de la licenciada Medina Rivera; y realizar

gestiones de cobro o llamadas telefónicas a los clientes de la licenciada Medina Rivera.

Inconforme, el señor Valdés Pérez presentó por derecho propio dos recursos de apelación ante el Tribunal de Apelaciones. Luego de consolidarlos, el foro intermedio modificó las sentencias del Tribunal de Primera Instancia y determinó que procedía la desestimación sin perjuicio de la demanda presentada por el señor Valdés Pérez así como de la reconvención que presentó, siempre y cuando este compareciera en el futuro mediante representación legal.

Además, el foro apelativo intermedio confirmó la decisión del Juez Quiñones Artau de prohibir que el señor Valdés Pérez compareciera por derecho propio. Concluyó que

> [E]ste no puede defender adecuadamente sus propios intereses, no acata órdenes judiciales, su incumplimiento es reiterado, y aunque puede con diligencia presentar y replicar a escritos, no tiene la capacidad para formular defensas objetivas ni argumentos claros y precisos sobre los fundamentos legales que animan sus reclamos contra la parte contraria. Su óptica es personalista, lo que contribuye a la confusión y a la distorsión de los asuntos legales medulares.

El Tribunal de Apelaciones, además, dejó sin efecto la orden de medidas cautelares con carácter permanente dirigidas al señor Valdés Pérez, por entender que se dictaron de forma sumaria, sin vista y sin pasar prueba.

El 6 de septiembre de 2012, el señor Valdés Pérez presentó una queja juramentada contra el Juez Quiñones Artau en la que alegó que este no fue imparcial, demostró

severidad excesiva y abusó de su discreción judicial, entre otras cosas.

Como consecuencia de las tres quejas que se presentaron en contra del Juez Quiñones Artau mientras ejercía su cargo en los tribunales de Arecibo y Bayamón, la entonces Directora Administrativa de los Tribunales, Hon. Sonia I. Vélez Colón, presentó un informe de investigación sobre la conducta del Juez Quiñones Artau ante la Comisión de Disciplina Judicial (Comisión) el 18 de octubre de 2013. Se designó a la Comisionada Asociada, Lcda. Delia Lugo Bougal, para que hiciera la determinación de causa correspondiente. La licenciada Lugo Bougal presentó un Informe sobre Determinación de Causa el 4 de noviembre de 2013, en el que concluyó que existía causa suficiente para continuar un proceso disciplinario contra el Juez Quiñones Artau por posible infracción a los Cánones 7, 8, 9, 11, 13, 14, 20 y 23 de Ética Judicial, 4 LPRA Ap. IV-B. Recomendó, además, que se relevara al Juez Quiñones Artau de sus funciones judiciales hasta que culminara el proceso disciplinario.[7]

El 15 de noviembre de 2013, la OAT presentó una querella en la que imputó varios cargos al Juez Quiñones Artau por violaciones a los Cánones 7, 8, 9, 11, 13, 14 y

---

[7] El 7 de octubre de 2014, la Jueza Presidenta señora Fiol Matta, al amparo de la Regla 12 de Disciplina Judicial, 4 LPRA Ap. XV, relevó de sus funciones judiciales al Juez Quiñones Artau.

23 del Código de Ética Judicial, supra.[8] Luego de varias comparecencias de la OAT y del Juez Quiñones Artau, el caso quedó sometido ante la Comisión. Esta emitió un informe final el 1 de octubre de 2014 que contenía sus determinaciones de hechos y su recomendación. Acogemos las determinaciones de hechos contenidas en el informe de la Comisión. Véanse: In re Ruiz Rivera, 168 DPR 246, 278 (2006); In re Saavedra Serrano, 165 DPR 817, 829 (2005). Luego de evaluar las recomendaciones allí señaladas, entendemos que el Juez Quiñones Artau incurrió en varias violaciones a los Cánones de Ética Judicial, supra.

## II.

La Constitución de Puerto Rico, Art. V, Sec. 11, Const. de Puerto Rico, LPRA, Tomo 1, confiere autoridad a este Tribunal para atender procedimientos disciplinarios relacionados con los jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones. Para llevar a cabo esa función aprobamos los Cánones de Ética Judicial, 4 LPRA Ap. IV-B, los cuales imponen ciertos deberes a los jueces con el fin de promover la confianza de los ciudadanos en nuestro sistema judicial. In re Sierra Enriquez, 185 DPR 830, 850 (2012); In re Claverol Siaca, 175 DPR 177, 188 (2009). "En el preámbulo de dichos cánones se reconoce la importancia de la función judicial y se impone a los jueces el deber y la responsabilidad de

---

[8] En vista al resultado que llegamos, resulta innecesario expresarnos sobre las violaciones al Canon 7, supra.

aceptar ciertas restricciones a su conducta, tanto en el ámbito de sus funciones judiciales como en otras actividades profesionales y personales". In re Claverol Siaca, supra. La confianza que deposita el pueblo en la justicia exige que los jueces actúen correctamente y promuevan la impresión de que actúan conforme a los más altos niveles de principios morales. In re Maldonado Torres, 152 DPR 858, 867 (2000).

A. Canon 8

El Canon 8 de Ética Judicial, 4 LPRA Ap. IV-B, dispone lo siguiente:

> Para el cabal desempeño de sus funciones, las juezas y los jueces serán laboriosos, **prudentes, serenos e imparciales**. Realizarán sus funciones judiciales de forma independiente, partiendo de una comprensión cuidadosa y consciente de la ley, libre de cualquier influencia ajena, de instigaciones, presiones, amenazas o interferencias, ya sean directas o indirectas, provenientes de cualquier fuente o por cualquier razón. Enmarcarán sus funciones adjudicativas en el estudio del Derecho y en la diligencia orientada hacia el empeño de descubrir los hechos esenciales de cada controversia.
>
> La conducta de las juezas y de los jueces ha de excluir la posible apariencia de que son susceptibles de actuar por influencias de personas, grupos, partidos políticos o instituciones religiosas, por el clamor público, por consideraciones de popularidad o notoriedad, o por motivaciones impropias. (Énfasis suplido.)

Este canon enfatiza el principio de la independencia de criterio judicial que debe regir durante las funciones adjudicativas de los jueces. Esta norma pretende evitar que los jueces tomen decisiones "ensoberbecidos por el poder". In re Sierra Enriquez, supra, pág. 851; In re Cruz

Aponte, 159 DPR 170, 180 (2003). Como ya hemos expresado, "aunque la figura del juez está revestida de autoridad, ésta no debe utilizarse indebidamente dentro o fuera del tribunal". In re Claverol Siaca, supra, pág. 189, citando a In re Cruz Aponte, supra.

El Juez Quiñones Artau no pudo mantener serenidad e imparcialidad durante los procesos adjudicativos, tal y como lo requiere el Canon 8, supra. Su capacidad para adjudicar controversias de forma imparcial, se vio comprometida por experiencias negativas durante el periodo que laboró como abogado de la SAL. Así lo manifestó mediante expresiones hechas dentro y fuera de la sala atacando la credibilidad de los agentes que testificaban en su sala. Demostró que no pudo despojarse de esas opiniones que formó como abogado de la SAL y que lo influenciaban al momento de aquilatar la prueba y evaluar los testimonios de los agentes de la policía. Los comentarios y expresiones del juez sobre la credibilidad del sargento Quiñones Ortiz daban la apariencia de ser susceptible a actuar por motivaciones impropias. Eso es precisamente lo que prohíbe el Canon 8, supra.

Por otro lado, el Juez Quiñones Artau demostró que no podía adjudicar las controversias partiendo de una comprensión cuidadosa e independiente de la ley al expresar que no le daba credibilidad al agente Víctor Mora Pérez de la División de Armas y Drogas de Arecibo por lo que había leído en un libro del Sr. Alejo Maldonado.

Además, su empeño por procesar al agente Núñez Fernández llevó al Juez Quiñones Artau a realizar gestiones para celebrar una vista a pesar de que había sido trasladado al Tribunal de Primera Instancia de Bayamón. Además de actuar sin facultad para ello, ignoró la determinación de la Jueza Ruiz Soto, quien archivó el caso con perjuicio, e insistió en continuar con un proceso que ya había sido atendido y resuelto. Utilizó su posición de juez, desde que fue trasladado a Bayamón, para hacer arreglos para conseguir que se celebrara una vista en el Tribunal de Primera Instancia de Arecibo con la comparecencia del agente Núñez Fernández. De esa forma abusó del poder y las facultades de su cargo, violando el Canon 8, _supra_.

B. Canon 9

Por su parte, el Canon 9 de Ética Judicial, 4 LPRA Ap. IV-B, establece, en lo pertinente, que

> Las juezas y los jueces concederán a toda persona que tenga interés en un procedimiento o la abogada o al abogado de dicha persona **el** derecho a ser oída conforme lo dispone la ley. En el cumplimiento de este deber, resolverán cada controversia fundamentándose en su propia evaluación **de la prueba presentada**. Los jueces y las juezas no permitirán que el reclamo por las partes de sus derechos constitucionales y estatutarios influya negativamente al hacer sus determinaciones judiciales. (Énfasis suplido.)

En _In re Díaz García_, 158 DPR 549, 558-559 (2003), expresamos que "la negativa del debido proceso de ley es la falta de observar aquella imparcialidad fundamental que es la esencia de todo concepto de justicia". Para

determinar que un error de hecho o de derecho constituye conducta antiética conforme este canon, debe probarse que el error constituyó un abuso intencional de la discreción judicial, o que su magnitud reflejó conducta impropia o favoritismo hacia alguna parte. In re Díaz García, supra, págs. 558-559. Véase, además, In re Jackson Sanabria, 97 DPR 1 (1969).

El Juez Quiñones Artau violó las disposiciones de este canon. Según se desprende del informe de la Comisión, en la vista del 9 de noviembre de 2012, el Juez Quiñones Artau procesó y encontró culpable al agente Núñez Fernández sin importarle que el caso había sido archivado con perjuicio por una compañera jueza y que, por lo tanto, no tenía autoridad para adjudicarlo. Esa actuación constituye una falta de imparcialidad que viola el debido proceso de ley. El Juez Quiñones Artau tenía conocimiento del archivo del caso y, comoquiera, continuó con el procedimiento en contra del agente Núñez Fernández. Informe de la Comisión, pág. 34. Eso demuestra que la actuación del Juez Quiñones Artau no fue un mero error de derecho, sino un abuso intencional de su poder.

C. Canon 11

El Canon 11 de Ética Judicial, 4 LPRA Ap. IV-B, va dirigido a preservar la imparcialidad de los jueces durante los procesos judiciales y velar porque estos procesos se rijan de forma justa. En específico, dispone:

> Aunque es función y derecho de las abogadas y los abogados presentar el caso de sus

respectivos clientes y clientas en la forma más favorable a sus méritos, es ministerio fundamental de la judicatura velar por que no se cometa una injusticia. Las juezas o los jueces son partícipes en la búsqueda de la verdad y la determinación de lo que es justo. A esos fines, deberán intervenir durante el curso de cualquier procedimiento judicial para evitar dilaciones injustificadas, para esclarecer cualquier asunto o impedir una injusticia.

No obstante, se abstendrán de unirse en solidaridad con cualesquiera de las partes mediante interrogatorios injustificados, pronunciamientos sobre los méritos de la causa o **comentarios impropios o perjudiciales**. Tampoco realizarán gestiones que constituyan intervenciones indebidas con testigos, prueba documental o cualquier aspecto del proceso judicial. Canon 11 de Ética Judicial, <u>supra</u>. (Énfasis suplido.)

El Juez Quiñones Artau hizo expresiones en sala que fueron impropias y debilitaron la confianza en los procesos judiciales. El Juez Quiñones Artau expresó que ya en su mente el sargento Quiñones Ortiz no tenía ninguna credibilidad ante él. Ese comentario fue perjudicial, pues demostró que no podría ser imparcial al adjudicar cualquier otro asunto en el que ese sargento sirviera de testigo.

Por otro lado, el Juez Quiñones Artau intervino indebidamente con los fiscales al expresar molestia cuando estos solicitaron la revisión de su determinación y la paralización de los procedimientos en el caso del agente Núñez Fernández. Al ser notificado de la orden de un foro superior paralizando la vista que se proponía celebrar, hizo expresiones de venganza -"recuerda que hay un día detrás del otro y que esta eventualmente me la vas a

pagar"- contra los fiscales Juarbe Molina y Mujica de León por estos hacer su trabajo y diligenciar esa gestión. Con sus amenazas intentó intimidar a los fiscales para que no tomaran decisiones adversas a la determinación del juez y no utilizaran los mecanismos procesales a su disposición para defender la posición del Ministerio Público. En conclusión, el Juez Quiñones Artau también violó el Canon 11, supra, que requiere que los jueces no intervengan indebidamente con cualquier aspecto del proceso judicial.

D. Cánones 13 y 14

Los jueces tienen "el deber de tratar con consideración y respeto a los abogados, a cualquier persona que comparezca ante el tribunal y a los funcionarios de la Rama Judicial". In re Claverol Siaca, supra, pág. 189. Este deber surge del Canon 13 de Ética Judicial, supra, el cual también impone a los jueces el deber de exigir igual conducta a todos esos participantes del proceso adjudicativo.

De igual forma, el Canon 14 de Ética Judicial, 4 LPRA Ap. IV-B, trata sobre la conducta que deben mantener los jueces en el transcurso del proceso judicial. Su texto lee:

> En el curso de los procedimientos judiciales, las juezas y los jueces mantendrán su conducta dentro de la debida propiedad y circunspección sin mostrar impaciencia o severidad excesivas. Tampoco harán comentarios ni gestos ajenos al proceso judicial, entendiéndose comprendidos dentro de esta prohibición, aquellos comentarios, expresiones o gestos que envuelvan burla o mofa. No ridiculizarán de modo alguno a abogadas,

abogados, partes, testigos, funcionarias o funcionarios del tribunal ni a otras personas que acudan ante el tribunal.

Las juezas y los jueces dirigirán los trabajos del tribunal con orden y decoro, y **evitarán todo proceder que pueda afectar la dignidad y el respeto debido al tribunal.** Intervendrán para impedir cualquier conducta impropia de las partes, las abogadas y los abogados o cualquier otra persona, y tomarán las acciones que procedan de acuerdo con la ley, los Cánones del Código de Ética Profesional y las mejores tradiciones del sistema judicial. (Énfasis suplido.)

Los jueces tienen el deber de preservar la dignidad de los procedimientos judiciales y promover comportamiento regido por respeto mutuo. In re Maldonado Torres, supra, pág. 865. En los comentarios del Canon 14, supra, se indica que "[e]l juez o la jueza deberá evitar, además, toda expresión suya que pueda reflejar prejuicio de la naturaleza que sea o que pueda arrojar dudas sobre su capacidad para actuar imparcialmente". Véase, además, R. J. Torres Torres, *Cánones de Ética Judicial de Puerto Rico* 9 (Núm. 1-4) Forum 7, 8 (1993), pág. 22. De igual forma, deben evitar "cualquier tipo de conducta que lesione el decoro y la solemnidad que deben existir en toda sala de justicia". Íd.; In re Andréu Ribas, 81 DPR 90, 121 (1959). Ello debe ser así independientemente de que el juez sea provocado por la conducta, incapacidad o irresponsabilidad de una parte. In re Maldonado Torres, supra, pág. 869.

No obstante, esto no implica que el juez esté desprovisto de un remedio para vindicar la dignidad del tribunal, pues cuenta con el mecanismo del desacato civil

y el criminal, así como como cualquier otra medida que establezca la ley o sea avalada por el sistema judicial. Íd.; Pueblo v. Vega, Jiménez, 121 DPR 282, 289 (1988).

En In re Martínez González, 151 DPR 519, 524-525 (2000) un juez gritó a una persona durante una vista que si no se callaba lo iba a mandar "a la j—— cárcel" (letras omitidas); también le dijo mentirosa a una testigo; y advirtió a un abogado que, de traer a ciertos funcionarios a testificar, "los iba a pasar por la piedra". Al respecto, pronunciamos que

> La utilización de palabras soeces durante una vista que el propio querellado presidía trastocan, de por sí, los cánones antes mencionados. La situación se agrava al estos comentarios estar dirigidos a testigos, abogados y personas presentes en la vista. La manifestación del querellado sobre la mendacidad de una testigo mientras ésta testificaba, su expresión en cuanto a unos testigos de "pasarlos por la piedra" si eran utilizados y las expresiones de palabras soeces vertidas en el proceso, definitivamente vulneran la fe del pueblo en la justicia y deshonran la integridad e independencia del ministerio que ejerce (Canon I de Ética Judicial, *supra*). Dicha conducta demuestra imprudencia, parcialidad y falta de serenidad (Canon II de Ética Judicial, *supra*). Constituye además comentarios impropios o perjudiciales (Canon XIV de Ética Judicial, *supra*); y, una extralimitación de la debida propiedad y circunspección en las manifestaciones y tono de voz exigidos por el Canon XVII de Ética Judicial, *supra*, a todo juez. El querellado claramente demostró una falta de consideración y de respeto hacia las partes, testigos, y abogados relacionados con los procedimientos que estaban ante su consideración, elementos exigidos por el Canon XVI de Ética Judicial, *supra*. Íd., pág. 528.

El Juez Quiñones Artau violó los requerimientos de los Cánones 13 y 14, supra. Los comentarios que realizó a los

fiscales Juarbe Molina y Mujica de León fueron irrespetuosos y afectaron la dignidad de los procedimientos judiciales. Al referirse a los fiscales como "potrones" porque discrepaban de él y amenazar al fiscal Juarbe Molina con la expresión "esta eventualmente me la vas a pagar" por haber solicitado la revisión de su dictamen, el Juez Quiñones Artau no observó el comportamiento y la conducta que exige su cargo.

A esto se suma que el Juez Quiñones Artau le gritó en una ocasión al Fiscal Mujica de León lo siguiente: "Te callas la boca, te callas la boca o sabes lo que te va". Esa expresión tampoco guarda el debido respeto que un juez viene obligado a observar en los tribunales. El Juez Quiñones Artau manchó con sus actos la dignidad de los procesos judiciales y se mostró hostil hacia los fiscales, quienes únicamente hacían su trabajo. Con esa conducta también incurrió en una violación al Canon 14, supra.

Además, las expresiones de que el testimonio del sargento Quiñones Ortiz le causaban "náusea y disgusto", no demuestra el respeto y consideración que debe guardar un juez durante los procesos ante su consideración.

E. Canon 23

Referente a las actividades extrajudiciales, el Canon 23, 4 LPRA Ap. IV-B, requiere que el comportamiento de los jueces en público no ponga en duda su capacidad para ejercer su función adjudicativa de manera imparcial. También les exige que sus actuaciones no deshonren el

cargo judicial que ocupan ni interfieran con el desempeño de sus funciones. Íd. "Este canon va dirigido a pautar una norma de conducta general que responde a la alta estima y confianza públicas que gozan los miembros de la Judicatura". In re Claverol Siaca, supra, pág. 190. "Su propósito es establecer una norma general precisa para regir el comportamiento público de las juezas y los jueces en el ámbito de sus actividades fuera del estrado". In re Aprobación de Cánones de Ética Judicial de 2005, 164 DPR 403, 445 (2005). La función judicial demanda un tipo de comportamiento, tanto dentro como fuera del tribunal, que vaya dirigido a enaltecer el cargo judicial y fomentar el respeto hacia este. Íd.; In re Cruz Aponte, supra; In re Nevárez Zavala, 123 DPR 511 (1989).

No encontramos que el Juez Quiñones Artau haya incurrido en una violación del Canon 23, supra. Ese canon se refiere a la conducta que deben observar los jueces en el contexto extrajudicial. Las actuaciones del Juez Quiñones Artau que dieron lugar a las quejas examinadas en el informe de la Comisión ocurrieron como parte de sus funciones judiciales. Por ello, el Juez Quiñones Artau no violó las exigencias de ese canon.

### III.

Por otra parte, la Comisión de Disciplina Judicial concluyó que el Juez Quiñones Artau violó los Cánones de Ética Judicial por imponer una sanción de desacato al

señor Valdés Pérez. No estamos de acuerdo con esa conclusión.

Hemos dicho "que no se puede invocar nuestra jurisdicción disciplinaria para que pasemos juicio sobre un dictamen judicial, en sustitución de los mecanismos de revisión que nuestro ordenamiento jurídico provee". In re Sierra Enríquez, 185 DPR 830, 849 (2012). Por ello, en respeto a la independencia de los jueces para decidir, enmendamos la Regla 3 de Disciplina Judicial, 4 LPRA Ap. XV-B, para consignar que "no será investigada aquella queja o solicitud de separación que [...] (b) pretenda intervenir impropiamente con determinaciones judiciales [...]". Véase In re Emda. R. 3 Disciplina Judicial, 182 DPR 533, 537 (2011).

Solo "[e]n circunstancias extremas, la imposición de un desacato podría considerarse como una violación al Código de Ética Judicial que amerit[e] la imposición de sanciones disciplinarias". In re Hon. Díaz García, T.P.I., supra, págs. 558-559 (2003). Al analizar si la imposición de un desacato constituyó una violación ética, no revisamos si el desacato cumplió estrictamente con los términos prescritos en el ordenamiento. Solo examinamos, según expuesto anteriormente, si "el error cometido constituyó un **abuso intencional** de la discreción judicial o que su magnitud demuestra un favoritismo o una conducta impropia hacia alguna parte". Íd., pág. 559. (Énfasis suplido). Véase, además, In re Jackson Sanabria, supra. "En

tal caso no estaríamos ante un error de derecho, sino más bien ante una conducta deliberada, claramente reñida con los Cánones de Ética Judicial". In re González Acevedo, 165 DPR 81, 95 (2005).

Luego de revisar el expediente, no encontramos prueba de que el Juez Quiñones Artau haya abusado intencionalmente del recurso del desacato o que haya actuado motivado por favorecer impropiamente a una parte. Más bien, surge del expediente que el Juez Quiñones Artau se encontraba ante una persona que desafió reiteradamente la autoridad del tribunal.

El señor Valdés Pérez insistió numerosas veces en comparecer por derecho propio, aun cuando el tribunal no se lo permitió. Además, desobedeció en múltiples ocasiones las órdenes para devolver los expedientes de la licenciada Medina Rivera. Por tal razón, entendemos que no existen las circunstancias extremas que exige nuestra jurisprudencia para que el desacato impuesto amerite la imposición de sanciones disciplinarias en contra del juez. "El remedio que tenía disponible [el señor Valdés Pérez] era acudir al proceso apelativo para la revisión judicial [...]". In re Hon. Díaz García, T.P.I., supra, pág. 561. Así lo hizo el señor Valdés Pérez. Si no estaba de acuerdo con la decisión del Tribunal de Apelacione, podía revisarla ante este Foro. Así, concluimos que el Juez Quiñoes Artau, al imponer la sanción del desacato al señor Valdés Pérez, no violó los Cánones de Ética Judicial.

IV.

"[P]ara imponer sanciones disciplinarias, nuestro ordenamiento ético disciplinario requiere que haya prueba clara, robusta y convincente de que hubo violaciones éticas". In re Muñoz, Morell, supra, pág. 853; Véase, además, In re Caratini Alvarado, 153 DPR 575, 585 (2001). La destitución de un juez tiene cabida en nuestro ordenamiento cuando este exhibe un patrón de conducta impropia e incompatible con su cargo, máxime cuando se incurre en el uso de lenguaje y expresiones impropias y soeces o conducta agresiva, beligerante y abusiva. In re Martínez González, 151 DPR 519, 531 (1998); In re Nevárez Zavala, 123 DPR 511, 525 (1989).

Luego de evaluar las actuaciones del Juez Quiñones Artau y las recomendaciones del informe de la Comisión, concluimos que el Juez Quiñones Artau violó los Cánones 8, 9, 11, 13 y 14 del Código de Ética Judicial, supra, mas no así el Canon 23, supra. Sus actuaciones mientras se desempeñaba como juez se apartaron de los principios básicos que establecen esos Cánones de Ética Judicial.

Dado que las actuaciones del Juez Quiñones Artau resultan claramente incompatibles con su cargo, procede su destitución inmediata.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Federico Quiñones Artau                    AD-2013-1

SENTENCIA

En San Juan, Puerto Rico, a 29 de junio de 2015.

Por los fundamentos antes expuestos, en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente Sentencia, y luego de evaluar las actuaciones del Juez Quiñones Artau y las recomendaciones del informe de la Comisión, concluimos que el Juez Quiñones Artau violó los Cánones 8, 9, 11, 13 y 14 del Código de Ética Judicial, supra, mas no así el Canon 23, supra. Sus actuaciones mientras se desempeñaba como juez se apartaron de los principios básicos que establecen esos Cánones de Ética Judicial.

Dado que las actuaciones del Juez Quiñones Artau resultan claramente incompatibles con su cargo, procede su destitución inmediata.

Notifíquese personalmente a través de la Oficina del Alguacil del Tribunal Supremo.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo emitió un Voto de conformidad. La Juez Asociada señora Rodríguez Rodríguez no intervino. La Jueza Asociada Oronoz Rodríguez está inhibida.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Federico Quiñones Artau            AD-2013-1

Voto Particular de Conformidad emitido por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 29 de junio de 2015.

Lamento tener que otorgar mi conformidad en este asunto, pues el Lcdo. Federico Quiñones Artau y este servidor nos iniciamos juntos en la Academia Judicial. No obstante, la prueba fue clara y robusta en cuanto a la violación de los Cánones 8, 9, 11, 13 y 14 del Código de Ética Judicial, 4 LPRA Ap. IV-B.

La toga que portamos nos agencia un gran poder, y como tal, los jueces debemos ser extremadamente cuidadosos. Celosos no solo en el uso de ese poder, sino en la corrección de nuestras actitudes. Como señala la máxima "*uti, non abuti*"; la toga es para "uso, no abuso", y nuestro temperamento en el manejo de nuestros procesos judiciales debe reflejar esa máxima.

De todos modos, "*ex abusu non arguitur in usum*"; esto es, el abuso no pone en tela de juicio el uso correcto del poder.


                              Erick V. Kolthoff Caraballo
                                    Juez Asociado